ESTATE OF GOODRICH.

WILLS.   (1) *Intention of testator to govern.*   (2, 3) *Case stated; will construed.*

1. Effect is to be given, if possible, to the *intention* of a testator, clearly indicated by his will.

2. A testator devised and bequeathed his "home farm," and certain personal property connected therewith, to his son for his use during his natural life, and added: "My wife is to have a home and good support as long as she lives on the home premises, board and clothing, money for reasonable expenses; or, at her option, $200 per year while she remains my widow, and $100 a year thereafter during her natural life." *Held,* that the intention here manifested is, that the home farm shall be primarily chargeable with the maintenance of the widow.

3. The will further directs that the notes and bonds belonging to the testator, and debts due him, shall be collected; that his debts shall be paid out of the fund thus arising; and that the remainder of the fund shall go into the hands of a trustee to be chosen by the testator's widow, son and daughter, and be converted into "United States or other safe bonds," the interest and principal of which are "pledged to the support" of the widow, "if all else should fail, during her natural life." *Held,*

   (1) That neither interest nor principal of the trust fund so provided is chargeable with the support of the widow, except on failure of other provisions of the will for her support.

   (2) That as there is no other such provision, except that found in the clause relating to the home farm, this confirms the construction already given to that clause.

APPEAL from the Circuit Court for *Walworth* County.

Joseph Goodrich of Milton, Rock county, in this state, died testate in 1867, leaving him surviving his wife, Susan H. Goodrich, his son *Ezra Goodrich,* and his daughter *Jane G. Davis.* At the time of executing his will, and afterwards until his death, said testator resided on his farm in sections 25, 26 and 27 in said town of Milton. The will, omitting some clauses of no importance here, was in the following words:

"I give for the use of my son *Ezra,* all my real estate on

sec. 25, sec. 26 and sec. 27  *  *  *. and he shall not have the right to sell or dispose of this estate, which is to fall to his heirs [with certain specified exceptions], and all my farm stock, tools, wagons [etc., etc.] — in short, my son Ezra is to step into all my possessions as aforesaid, here on the home farm, for his use during his life, but not to sell or convey, except as aforesaid, but it is to be preserved for his heirs. The balance of my real estate, within the state of Wisconsin, away from said sections 25, 26 and 27, shall go to my daughter Jane.

"My good wife is to have a home and a good support as long as she lives on the home premises, board and clothing, money for reasonable expenses, or at her option two hundred dollars per year while she remains my widow, and one hundred dollars a year thereafter during her natural life.

"Notes, U. S. bonds, other bonds and debts due me or which will become due, are to be collected, out of which shall be settled my mortgage of one thousand dollars to Cromwell, of N. York, and $667 mortgage to Mrs. Conklin of Mass., and any other debts which I may owe.

"The balance are to be put into the hands of a trustee to be chosen by my wife, son and daughter, and then invested in United States or other safe bonds, and the interest and principal pledged to the support of my wife, if all else should fail, during her natural life, as aforesaid, then the balance to be divided equally among my heirs according to law."

The testator's widow continued to reside on the "home farm" until May, 1868, when she removed therefrom, and declared her option to receive the specific annual money allowance mentioned in the provision of the will relating to her. The administrators paid her $25 for her reasonable expenses while she remained on the home farm, and subsequently, in September, 1868, paid her $100. In May, 1869, they rendered their account to the county court of Rock county; and that court, finding that the will disposed of all the testator's property, real and personal, allowed the administrators to deduct

from the amount of the moneys which had come to their hands from the sale of notes and bonds belonging to the estate, and debts due it, the aforesaid sum of $125 paid to Mrs. Goodrich. *Jane G. Davis* appealed from this determination to the circuit court for Rock county, and the place of trial was changed to the circuit court for Walworth county, where the decision of the county court in the particular named was reversed, the circuit court holding that the support of Mrs. Goodrich was, under the will, primarily chargeable upon the "home farm," and personal property connected therewith, devised and bequeathed to *Ezra Goodrich.*

From this judgment of the circuit court, the administrators appealed.

*John R. Bennett* and *J. B. Cassoday,* for appellants:

There is nothing in the will to indicate that the "good support, board, clothing, money for reasonable expenses," or the $200, are chargeable upon the property willed to *Ezra,* rather than upon any of the other property mentioned in the will. It seems that the testator intended that these should be paid out of the *interest* on the general or trust funds in the hands of the trustees, and that, in addition to the *interest,* he pledged to the support of his wife the *principal,* "if all else should fail"—meaning if the interest should fail, as it might, especially if circumstances were such as to induce her not to remain on the home premises, but to take the $200 annually. Since this fund is the only property designated out of which the good support, etc., or the $200 are to be paid, and the only property not otherwise disposed of by the will, during the widow's lifetime, it follows that it must be chargeable with the payment of these things, or that each legatee and devisee must pay his or her proportionate share thereof. It is unreasonable to hold that the annuity is payable out of the property disposed of by the will instead of that not so disposed of. 1. It is well settled that the rights of a devisee, and those of a legatee, vest *immediately* upon the death of the testator. 1 Redf. on Wills, 379, pl. 1, 2; id.

413, pl. 3, and cases there cited; R. S., ch. 92, sec. 1, and ch. 97, sec. 1. 2. By the statute the debts and expenses are first to be paid out of the property designated in the will, and, if that is not sufficient, then out of the property *not disposed of in the will*, if any; and, failing these, the shares of the property disposed of by the will are liable proportionately (R. S., ch. 97, secs. 31–37); and the personal estate is first chargeable, and the real estate not to be resorted to unless the goods, chattels, etc., in the administrator's hands are insufficient (R. S., ch. 100, sec. 6). The good support, board, clothing, and money for reasonable expenses, or the ·$200 per year, mentioned in the will, are nothing more than a debt against the estate (subordinate to the other debts and expenses), and must be paid out of the property designated in the statute, and in the order there mentioned, unless there is in the will a direction for its payment out of some particular property or fund. 3. At the common law, legacies and annuities given generally, without reference to any particular fund, are payable out of the personal estate; and the rule with respect to *exoneration* applies to them. Hawkins on Wills, 289. If real and personal estate are *given together*, subject to charges, and the real estate is *not directed to be sold*, the personal estate remains primarily liable. Hawkins, 290–91, and cases there cited. So stringent is this rule, that in case of a deficiency of personal property, the legacies must *abate*, unless the intention of the testator to charge his real estate with their payment is expressed in or fairly inferrable from the terms of the will. *Warren v. Davies*, 2 Myl. & K., 49; *Lupton v. Lupton*, 2 Johns. Ch., 614; *Harris v. Fly*, 7 Paige, 421; *Reynolds v. Reynolds*, 16 N. Y., 259, 260, 262. In order that the personal estate may be exonerated, the intention must appear not only to *charge* the real estate, but to *discharge* the personal. Hawkins, 286–7; *Walker v. Hardwick*, 1 Myl. & K., 396, 402–3; *Rhodes v. Rudge*, 1 Sim., 79; *Duke of Ancaster v. Mayer*, 1 Bro. C. C., 454; *Tait v. Ld. Northwick*, 4 Ves., 823; *Watson v. Brickwood*, 9 id., 447, 453–6; *Bootle v. Blundell*, 19 id., 494. 4.

Where the whole or a portion of the personal estate is specific-ally given, and then real estate is devised in trust to sell, and out of the proceeds pay debts and expenses, and then to invest the residue in trust for certain purposes, and, when the objects of the trust are completed, the remainder to be divided, the personal estate so specifically given will be *exonerated.* Hawkins, 288; *Driver v. Ferrand,* 1 Russ. & Myl., 681, 685–6; *Blount v. Hipkins,* 7 Sim., 43. And, upon the authorities above cited, it follows that there is much stronger reason for exonerating real and personal estate specifically given, in a case like this, where choses in action are to be held in trust for the payment of specific debts *and all other debts,* and then the balance pledged for the payment of the annuity, and then, on the death of the widow, to be divided. On this point counsel further cited *Bynum v. Hill,* 71 N. C., 321; *Mitchell v. Mitchell,* 21 Md., 244; *Greene v. Greene,* 4 Mad., 148; *Michell v. Michell,* 5 id., 69.

*I. C. Sloan,* for respondent, contended that, from the terms of the will, it was clearly the testator's intention to charge the widow's support primarily upon the home premises and personal property connected therewith; and that, if otherwise, the testator did not provide any fund whatever for the widow's support, since the residue of the personal estate was evidently not to be liable until some other fund had failed. *Henry v. Barrett,* 6 Allen, 500.

COLE, J. On the question of construction raised by this appeal, the intention of the testator, as expressed in the will, appears to be very plain. This intention is to govern, if it is possible to give it effect, when clearly indicated upon the face of the will. What property, then, did the testator intend to charge with the support of his widow, or with the payment of her annuity, providing she did not choose to live on the home farm? It seems to us obvious from the various clauses of the will, that his intention was to charge her support upon the home farm, and to make that farm and the property bequeathed

with it the primary fund or means chargeable with her support. And in case the widow should elect to take the annuity provided in the will, then the devisee of the home farm was the person liable for its payment, and it was made a charge upon the property which he took by the will. This, we think, is the clear intention of the testator, as expressed in his will; and this intention is not to be defeated by any nice or ingenious construction which astute counsel may suggest.

By the first clause, the home farm, with various articles or kinds of personal property, is devised to *Ezra* for his use during his natural life. Then follows this clause: "My good wife is to have a home and good support as long as she lives on the home premises, board and clothing, money for reasonable expenses; or, at her option, $200 per year while she remains my widow, and $100 a year thereafter during her natural life." Here the manifest intention is, to provide for the support of his wife on the home farm; that is, her maintenance and reasonable expenses were to come from that source, and it was the property primarily to be resorted to for that purpose. If there were any doubt upon this point, it is removed by the subsequent clauses of the will. The will directs that the notes, United States bonds, other bonds, and debts due the testator or to become due, should be collected, and out of the fund arising from this source the mortgages mentioned, and the testator's other debts, should be paid. The balance or remainder of this fund was to go into the hands of a trustee, chosen by his wife, son and daughter, who was directed to invest the same in United States or other safe bonds, and the interest and principal were pledged to the support of his wife, "*if all else should fail.*" The provision made for the support of the wife in this clause is auxiliary and subsidiary to some other means provided; because the language is, "*if all else should fail,*" then the interest and principal of this fund are "pledged" to the support of his wife. Now, what other provision had the testator made for the support of his wife, which he thought

Estate of Goodrich.

might possibly fail, when he made this additional provision? For, as observed by the counsel for the respondent, it is very evident that the residue of the personal estate was not to be chargeable with her support until some other fund or provision had failed. We find no other provision in the will for her support, unless in the first instance it was primarily made a charge upon the home farm, as we have no doubt the testator intended it should be.

The learned counsel for the administrators contends for a different construction of the will. He insists that it was the testator's intention to make the support of the widow, or the payment of the annuity in case she did not choose to live on the home farm, payable out of the trust fund arising from the cash, notes, bonds and debts due the estate. But there are insurmountable difficulties attending such a construction. What did the testator mean by the language that the principal and interest of this fund should be resorted to "*if all else should fail*," if her support was primarily chargeable on that fund? It makes nonsense of that clause of the will. It is apparent that the clause plainly and necessarily relates to some other provision which had been made for her support, and which the testator feared might possibly fail for some cause. In that event the interest and principal of this fund was devoted to her support, or the payment of the annuity, but could not otherwise be resorted to. We feel we should be doing great violence to the plain meaning of the language used by the testator, were we to adopt the construction contended for by the appellants' counsel.

*By the Court.*— That part of the judgment of the circuit court which is appealed from, is affirmed.