HUGHES, Administrator, vs. HUGHES and others.

*September 27 — October 22, 1895.*

*Wills: Construction: Perpetuities: Payment of legacies.*

1. A testator devised land to his wife for life, with remainder over to his son, and other land to his mother and sister jointly, and to the survivor of them, for life, with remainder over to the son, and directed, in case the son should die without issue living and before he attained majority, that "as soon after the determination of the said life estates as may be" the remainder be sold and certain legacies be paid from the proceeds. *Held,* that this did not, within the meaning of sec. 2039, R. S., suspend the absolute power of alienation in either case for a longer period than during the continuance of two lives in being at the creation of the estate.

2. The testator bequeathed to his son the principal sum secured by a mortgage, and directed that the interest be paid to his wife and used by her for the support of herself and the son and the education of the son. In the event of the death of his son without issue and before attaining majority, he bequeathed certain sums of money to persons named, and in a codicil he stated that said bequests should be paid out of his personal estate and from no other source. The son died before majority and without issue. The personal property, including the mortgage, was inadequate to pay the bequests mentioned. *Held,* that the mortgage as well as the other personal property should be applied to the payment of said bequests.

APPEALS from a judgment of the circuit court for Columbia county: R. G. SIEBECKER, Circuit Judge. *Affirmed in part; reversed in part.*

On July 5, 1873, Stephen Madden, of Portage, made his will, containing the following provisions:

"1. I give and bequeath to my beloved wife, *Elizabeth Madden,* lot No. 13, . . . of block No. 200 of the city of Portage, . . . the same being my homestead, excepting and reserving therefrom a strip of land [therein described], to be used and enjoyed by her during the term of her natural life; and from and immediately after her decease I give and devise

the same to my dear son, Charles Frederick Madden, his heirs and assigns forever. I also give and devise to my said wife, all and singular my household furniture and wearing apparel, to be used and enjoyed by her during her natural life; and, from and immediately after her decease, I give and devise the same to my said son, Charles Frederick Madden, his heirs and assigns forever.

"2. I give and devise my [other real estate therein described, being lot 14 and a strip from said lot 13] to my dear mother, Johanna Madden, and my dear sister, *Kate Madden*, to be used and enjoyed by them jointly so long as they both shall live, and to the survivor of them during her natural life, upon condition only that they shall duly and seasonably pay all taxes assessed on both lots 13 and 14; . . . and, from and immediately after the decease of the survivor of the devisees named hereinbefore in the second item of my will, I give and devise said lot number fourteen (14) to my said son, Charles Frederick Madden, his heirs and assigns forever.

"3. I give and bequeath to my dear mother, Johanna Madden, and my dear sister, *Kate Madden*, jointly, the policy of insurance on my life, issued by the New York Mutual Life Insurance Company, for the sum of two thousand dollars ($2,000), which said policy was executed on the 27th day of March, 1863, to my said mother, but the premiums upon which have all been paid by me. I hereby request my friend Emmons Taylor to make collection of the moneys that shall be due upon the said policy as soon as practicable, and pay the same over to my executors hereinafter named. And I hereby declare it to be my special wish and desire, and I hereby direct my said executor safely to invest the net proceeds of the said policy of insurance upon good security, and to pay the annual income thereof, share and share alike, to my said mother and my said sister *Kate;* it being my hope that the annual income thereof will be all that will

be required by them, and the principal sum arising from said policy may remain undiminished and unimpaired; but, in case of sickness of either, then and in that case I direct that so much of the said principal sum shall be paid over to and used by them as their comfort shall render necessary. And I hereby further direct and it is my will that, from and immediately after the death of the survivor of the devisees named in this item of my will, whatever sum shall remain of the avails of said policy of insurance shall at once become the property of my said son, absolutely, and the same shall be put at interest, upon good security, until he shall attain the full age of twenty-one years, and the annual income thereof shall be paid for his maintenance and education.

"4. I give and devise unto my dear son, Charles Frederick Madden, the principal sum of two thousand dollars, now loaned upon note and mortgage to Amos A. Hartson, of the town of Randolph, in the county of Columbia, Wisconsin. But I hereby specially direct that the interest accruing upon said sum of two thousand dollars shall be paid to and used by my said wife in the support and maintenance of herself and my said son, and the education of my said son.

"5. In the event of the death of my said son without issue and before he attains his majority, I, in that event, bequeath to my brother *Francis Madden* the sum of one thousand dollars; and to my wife, *Elizabeth Madden*, the sum of five hundred dollars; and to my niece *Johanna Madden* the sum of two hundred and fifty dollars; and to my niece *Mary Ann Madden* the sum of two hundred and fifty dollars; and to my brother *James Madden* the sum of five hundred dollars; and to my sister *Mrs. Mary Hall* the sum of two hundred dollars.

"6. I hereby revoke, and make null and void, all former wills by me at any time heretofore made.

"7. I hereby make, constitute, and appoint my revered friend, Reverend Matthew Keenan, of the city of Portage,

and my dear brother *James Madden*, of the city of Chicago in the state of Illinois, executors of this, my last will and testament."

On July 8, 1873, the said testator made a codicil to said will, as follows: "Whereas, I, Stephen A. Madden, of the city of Portage, Wisconsin, have made my last will and testament in writing, bearing date the 5th day of July, A. D. 1873, in and by which I did devise and bequeath my lots numbers thirteen (13) and fourteen (14) of block number two hundred (200) of the city of Portage to my son, Charles Frederick Madden, subject to certain life estates therein to my wife, *Elizabeth Madden*, and my mother, Johanna Madden, and my sister, *Kate Madden:* Now, therefore, I do by this, my writing, which I declare to be a codicil to my said last will and testament, and to be taken as a part thereof, order and declare that it is my will that in the event of the death of my said son, Charles Frederick Madden, without issue living and before he shall attain the age of twenty-one years, as soon after the determination of the said life estates as may be, that the remainder shall be sold and converted into cash, and out of the avails thereof that there shall be paid to the several persons next hereinafter named the several sums or legacies of money which follow their respective names, namely: To my brother *John Madden* the sum of one thousand dollars ($1,000); to my brother *Francis Madden* the sum of five hundred dollars ($500); to my niece *Johanna Madden* the sum of two hundred dollars ($200); to my niece *Mary Ann Madden* the sum of two hundred dollars ($200); to my brother *James Madden* the sum of five hundred dollars ($500); to my sister *Mrs. Mary Hall* the sum of ten dollars ($10). All of which legacies and sums of money hereinbefore mentioned I desire to have paid out of the avails of my said real estate when the same shall have been sold as hereinbefore provided. And I also declare that it was and is my will and desire that each and all of the sev-

eral bequests and legacies by me heretofore made in the fifth item of my said will, made by me on the said fifth day of July, A. D. 1873, be paid out of my personal estate, and from no other source. And, lastly, it is my desire that this codicil be annexed to and made a part of my last will and testament as aforesaid, to all intents and purposes."

On September 7, 1873, the said testator died, leaving said paper writings as his last will and testament, and October 22, 1873, the same were admitted to probate in Columbia county, and Matthew Keenan was appointed executor thereof. He died September 6, 1880, without having fully administered said estate. On March 25, 1881, the plaintiff was duly appointed administrator of said estate, with the will annexed. Charles Frederick Madden, mentioned in the will and codicil, was born December 12, 1872, and died, without any wife or issue, February 19, 1893.

On February 2, 1894, the plaintiff, as such administrator, commenced this action in the circuit court for Columbia county for the construction of said last will and testament. All the defendants, except *Elizabeth Hughes* and *Kate Madden*, answered by way of admissions, denials, and counter allegations. The said *Elizabeth Hughes* is the mother and only heir at law of said Charles Frederick Madden, and after the death of the said testator she married *Hughes*. Said homestead is of the value of $800. Said other real estate is of the value of $700. Said household furniture was of the value of $250. The whole amount of the personal property left of said estate, after settling the accounts of said executor, Keenan, is $2,207.15, consisting of the said Hartson mortgage of $2,000, and $207.15 in cash and other assets.

At the close of the trial and hearing the court construed the will, and it was accordingly adjudged and decreed as follows: " *First.* That the title of the household furniture and wearing apparel was, by the terms of the first item or

clause of said will, bequeathed to *Elizabeth Hughes* for life, then to Charles Frederick Madden, and that, said Charles Frederick Madden being now deceased, the said *Elizabeth Hughes* is the owner of said property absolutely, as his sole heir. *Second.* That the real estate known as lots thirteen and fourteen of block two hundred is lawfully disposed of by said will, and the same must be sold at the termination of the life estates therein, and proceeds derived from such sale must be applied on payment of the legacies mentioned in the codicil to said will. *Third.* That the principal sum of $2,000 secured by the Hartson mortgage, as so described in said will, was, by clause 4 of said will, lawfully bequeathed to Charles Frederick Madden absolutely, and was his property. *Fourth.* That at the death of said Charles Frederick Madden the said principal sum of $2,000 became the property of the defendant *Elizabeth Hughes*, as sole heir at law of said Charles Frederick Madden. *Fifth.* That the bequest of the interest on the said principal sum of $2,000 secured by the said Hartson mortgage was intended to be, by said clause 4 of said will, for the life of said Charles Frederick Madden, or during such time as he needed it for support and education, and same ceased at his death. *Sixth.* That the insurance policy mentioned in the will did not become the property of, or a part of, the estate of said Stephen Madden; that the same became property of Johanna Madden at the death of said Stephen. *Seventh.* That the costs and attorneys' fees of all parties be paid out of the estate, as allowed by the county court, on bills or claims presented therefor."

The plaintiff, as such administrator, and the defendant *Elizabeth Hughes*, appeal to this court from the second and fifth items, respectively, of said judgment and decree; and all of the defendants, except the said *Elizabeth Hughes* and *Kate Madden*, appeal from the third and fourth items, respectively, of said judgment and decree; and there is no

appeal from the first, sixth, or seventh items of said judgment and decree.

*W. S. Stroud*, for the plaintiff.

*J. H. Rogers*, for all the defendants except *Elizabeth Hughes* and *Kate Madden*.

CASSODAY, C. J.  1. It is contended on behalf of the administrator and *Mrs. Hughes*, that the devises of the real estate by the first and second clauses of the original will, as modified by the codicil, are void for the reason that they suspended "the absolute power of alienation . . . for a longer period than during the continuance of two lives in being at the creation of the estate," and hence are repugnant to the statutes in force at the time of the death of the testator.  R. S. secs. 2038, 2039.  Such contention is very clearly untenable.  By the first clause of the original will, two separate estates in the homestead were devised: One was a life estate to the widow, and that became vested in her immediately on the death of the testator; and the other was the remainder to the infant son, and that became vested immediately upon the death of the testator.  R. S. sec. 2025; *Saxton v. Webber*, 83 Wis. 626; *Baker v. McLeod's Estate*, 79 Wis. 534; *Burnham v. Burnham*, 79 Wis. 557.  As each of such estates was vested, it was, of course, alienable.  The codicil made no change in such devise to the widow, and the only change it made in such devise to the infant son was that in case he died, without leaving issue, before he attained the age of twenty-one, as he did, then such remainder so devised to him should, on the determination of the life estate to his mother, be sold and converted into cash, and the avails thereof used in paying the legacies as directed in the codicil. The rights of such legatees named in the codicil to have such real estate so sold and converted, and the avails thereof so applied, were, at the time of the creation of such estate in remainder, purely contingent upon the infant son's dying

without issue before he reached his majority, and the same remained so contingent until he did so die, and then, immediately, the equitable right to the same became vested in such legatees, to the extent that they might prevent any destruction or waste of the property so devised, by the life tenant or any one.   The mere fact that the right to sell, convert, and pay such legacies out of the avails thereof is, by the terms of the codicil, postponed from the death of the son to the termination of his mother's life estate, did not have the effect to suspend the power of alienation longer than the life of *Mrs. Hughes*, — even if it suspended it at all, which may be doubtful.   The only contingent estate terminated on the death of the son.   What has been said is applicable to the devise of real estate by the second clause of the will, as modified by the codicil.   The only difference is that by that clause the testator vested the life estate in two persons, — his mother and sister, — jointly, so long as they both should live, "and to the survivor of them during her natural life."   But, as indicated, that did not have the effect to suspend the power of alienation longer than those two lives, even if it suspended the same for one life, or at all.   It follows that the second item of the judgment correctly construed the devises mentioned.

2. The legacies which were thus directed by the codicil to be paid out of the avails of the real estate in case the infant son died before he was of age, without issue, were six in number, and amounted in the aggregate to $2,410.   By the fifth clause of the original will the testator directed that in the event of his infant son's death without issue, before attaining his majority, then the several legacies therein mentioned (being six in number, and aggregating in amount $2,700) should be paid, without designating the specific property out of which the same should be paid.   Legacies so given, under our statute, would seem to be first payable out of the personal estate, if the same is sufficient.   R. S. sec.

3899. The rule at common law is stated by Mr. Hawkins thus: "Legacies and annuities given generally, without reference to any particular fund, are, of course, payable out of the personal estate, and the rule with respect to exoneration applies to them." Hawkins, Wills, 289. See *Reynolds v. Reynolds' Ex'rs*, 16 N. Y. 257; *Goodrich's Estate*, 38 Wis. 492. But the testator has, by the codicil, expressly declared "that it was and is my will and desire that each and all of the several bequests and legacies by me heretofore made in the fifth item of my said will, made by me on the said fifth day of July, A. D. 1873, *be paid out of my personal estate, and from no other source.*" As indicated in the foregoing statement, there was only $2,207.15 of personal property belonging to the estate. Of that amount, $2,000 consists of the Hartson mortgage, the principal of which, by the fourth clause of the original will, was given to the infant son; and the current interest thereon was thereby directed to be paid to his wife, for the support and maintenance of herself and son, and the education of the son. But that was modified by the clause of the codicil quoted. It follows that the personal property mentioned must be applied in payment of the legacies mentioned in the fifth clause of the original will, as directed in the codicil.

*By the Court.*— Those portions of the judgment and decree appealed from by the plaintiff and *Mrs. Elizabeth Hughes* are affirmed; and those portions from which all the defendants except *Mrs. Hughes* and *Kate Madden* appealed are reversed, and the cause is remanded for further proceedings according to law. The costs and disbursements of all parties in this court are payable out of the estate. The county court is at liberty to make such allowance to the respective parties out of the estate, for counsel fees in this court, as, in the exercise of a sound discretion, may be just.