IN RE WILL OF BOUCK.

*March 21—October 15, 1907.*

*Wills: Construction of residuary clause: Residue, how ascertained: Indebtedness to testator: "Charge" on legacy: Appeal and error: Errors considered.*

1. Testator by the clause of his will disposing of the residue of his estate provided that such residue "be divided into three parts; one thereof" to M. R. and A. E. M., "such one part to be divided as follows: M. R. two thirds of said part and A. E. M. one third of said part . . . ; one of said three parts to M. M.;" "one part to C. D. . . . to W. C. B. one part." *Held*, that there was no uncertainty, ambiguity, or contradiction in the pro-

visions of the will, and that the testator's intention, as disclosed by the words of the will itself, was to dispose of the residue of his estate by giving two ninths to M. R., one ninth to A. E. M., one third to M. M., one sixth to C. D., and one sixth to W. C. B.

2. The will further made certain indebtedness of C. B. to the testator a "charge" upon the bequest to W. C. B.  *Held*, for the purpose of division among the beneficiaries that the indebtedness of C. B. should be considered part of the residuum of the estate.

3. In such case it was *held* that the testator used the word "charge" as affecting the bequest to W. C. B. in the sense of debiting such indebtedness against the one sixth of the residue bequeathed to W. C. B. for the purpose of making up such one sixth, and the executor was directed to assign and transfer the same to W. C. B.

4. On appeal from a judgment construing a will, error assigned, that the judgment permitted the executor to make application to the court for allowance for his disbursements and counsel fees to be paid out of the estate, cannot be considered, since it is not in the nature of a final determination of the lower court.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge.  *Reversed.*

This appeal is from a judgment of the circuit court for Winnebago county reversing a judgment of the county court of that county construing the will of Gabriel Bouck, deceased.

The circuit court made and filed findings of fact and conclusions of law, to which the devisees *Mary Ronan* and *Martha Murray* filed exceptions.  Thereafter judgment was entered pursuant to such findings and conclusions, and the devisees *Mary Ronan* and *Martha Murray* appealed to this court from said judgment, assigning as errors:

First. The circuit court erred in reversing the judgment of the county court and in construing paragraph 8 of said will to mean that said Gabriel Bouck intended to and did divide the residue of his estate into "parts" instead of into "three (3) parts," as named in said will.

Second. The court erred in holding that in said paragraph 8 the said Gabriel Bouck intended to and did give

said *Martha Murray* a one-fourth part of his estate instead of a one-third part thereof, as named in said will.

Third. The court erred in holding that *Mary Ronan* was entitled to two twelfths of the residuary estate instead of two ninths thereof, as found by the county judge and as expressly provided in said will.

Fourth. The circuit court erred in providing in its judgment that the executor be permitted to make application to the circuit court for allowance for his disbursements and counsel fees to be paid out of the estate.

*Charles Barber,* for the appellant *Mary Ronan.*

*E. D. Ronan,* for the appellant *Martha Murray.*

*John F. Kluwin,* for the executor, *George Hilton.*

For the respondent *Sarah Brumaghim* there was a brief by *Thompson, Thompson & Pinkerton,* and oral argument by *A. E. Thompson.*

For the respondent *Wm. C. Bouck* there was a brief by *Weed & Hollister,* and oral argument by *H. I. Weed.*

The following opinion was filed April 9, 1907:

TIMLIN, J. Testator was born December 18, 1826, made his will April 12, 1901, and died February 21, 1904. He was an eminent lawyer, colonel of a regiment in the War of the Rebellion, attorney general of Wisconsin, and member of Congress. He came to Wisconsin from New York in 1848, was the son of W. C. Bouck, some time governor of New York, had pecuniary and educational advantages in his youth, never married, and was very eccentric in manners, speech, and style of writing. His father and mother died long prior to April 12, 1901, and were buried in the family cemetery upon the old homestead of the family at Fultonham, Schoharie county, New York. At the time he made his last will and testament there were living representatives of five branches of his family, as follows: *Mary Ronan* of Albany, New York, and Ann Eliza Martin of New Haven, Connec-

ticut, daughters of Ann E. Sanford, his deceased sister; *Martha Murray* of Albany, New York, a daughter of James Bouck, his deceased brother; Caroline Danforth, a sister of testator living at Middleburgh, New York, and her children, *Sarah Brumaghim,* Kittie Hubbard, and Emily Fox of Albany, New York, and Anna Dunham of Talent, Oregon; Charles Bouck, a brother of testator living at Fultonham, New York, with his wife Julia, and their children, Kate Cornell, Marguerite Cornell, and Charles D. Bouck, all of Ithaca, New York, and their son, *William C. Bouck* of Oshkosh, Wisconsin; W. C. B. Danforth, a son of Catherine Danforth, a deceased sister of said testator.  Thus at the date of testator's will he had two sisters and one brother deceased leaving descendants, and one sister and one brother living having children.  *Mary Ronan* and *W. C. Bouck* seem to have been regarded by the testator with some affection; Julia, wife of Charles Bouck, W. C. B. Danforth, and Anna and Emily, daughters of his sister Caroline, with some aversion; the others with comparative indifference.  Testator was inclined to thrift and proud of his family name.  He kept in communication with his New York relatives called by him "the tribe" by letter, evidently desired and enjoyed detailed information or small gossip and personalities concerning them, and visited occasionally among such relatives.  He had in his possession for investment about $25,000 belonging to *Mary Ronan,* and he had paid debts of his brother Charles to the amount of nearly $12,000, to secure repayment of which he held a bond and mortgage upon the old Bouck homestead at Fultonham, New York, which belonged to Charles.  *W. C. Bouck,* the son of Charles, came from his father's home in New York in 1896 and entered the law office of the testator in Oshkosh as a student and was later admitted to practice law, and is a competent and worthy young lawyer in whom the testator took considerable pride. The testator left an estate of about $350,000.

In re Will of Bouck, 133 Wis. 161.

The will was written by testator in his own handwriting. He was several days working at it, and he evidently went over it and made corrections therein, because the last paragraph thereof contains the following: "Some interlineations all in my handwriting, one particularly in 8' Sub Sanford erased & Martin inserted by interlineation & in same Sub. their changed to 'her.'" The eighth paragraph of the will is as follows:

"Eighth. The rest residue & remainder of my estate I give bequeath & devise as follows: To be divided into three (3) parts; one thereof to *Mrs. Mary Ronan* (my niece) of Albany, N. York & my niece Anna Eliza Martin, such one part to be divided as follows: *Mrs. Mary Ronan* two thirds of said part & Anna Eliza Martin one third of said one part, if her son Sanford Martin shall not survive me then such one third hereby bequeathed & devised shall be & is hereby bequeathed & devised to my niece *Mary Ronan;* one of said three parts to my niece *Mrs. Martha Murray* of Albany, New York; one part to my sister Carolina Danforth of Middleburg N. York during her natural life, that is she is to have the net income thereof during her natural life & upon her decease or in case she does not survive me the same is hereby bequeathed & devised to her daughters *Mrs. Sarah Brumaghim* (*née* Sarah Danforth) Mrs. Kate (or Kittie) Hubbard (commonly called Kittie)· share and share alike, if either do not survive me, such share to go to the child or children of such deceased, if such deceased leaves no child or children then the same to go to survivor, if neither survive me & do not leave a child or children then the same to go to the children of my niece *Mrs. Mary Ronan,* surviving; to my nephew *William C. Bouck* of Oshkosh one part not to be paid to him or given or transferred to him until the death of his mother, my executor can pay him the whole or part of the net income if satisfied that he needs it for his own use."

The ninth paragraph of the will makes the indebtedness of Charles Bouck to the testator a charge upon the above bequest to *William C. Bouck.* This indebtedness is in fact less in amount than one sixth of the residue.

Two theories of construction are presented, each quite plausible. The construction claimed by appellants is that the words, "to be divided into three (3) parts," constitute a vital and controlling provision of the will; that one of these parts, identified by specific reference thereunto, is devised to *Mary Ronan* and Anna Eliza Martin, and another of these three parts, identified by specific reference thereto, is devised to *Martha Murray*. There was left for disposition by the testator only one third of the residue, and therefore the following provisions of the will, devising one part to Caroline Danforth and one part to *William C. Bouck* without words identifying such "part" with one of the three subdivisions first mentioned and without words designating or measuring such "part," must be taken to mean in each instance a part of the one third of the residue remaining undisposed of, and, there being only two remaining devises, that each of the two last named would take one half of the undisposed one-third of the residue; that, if necessary to carry this out, words should be added to the will indicating that the parts disposed of to Caroline Danforth and *William C. Bouck* were "parts," not of the whole residue, but "parts" of the remaining one third of the residue. On the other hand the respondents present the theory of construction adopted by the circuit court, which is in substance that the testator started out to draft this will under the impression that there were only three branches of the Bouck family deserving of his bounty, and continued to write with that thought in mind until he arrived at the last part of paragraph 8, forgetting, or overlooking by reason of some mental disturbance, the deserts and claims on his bounty of *W. C. Bouck*. Recollection or reflection brought back to him the name of *W. C. Bouck* and he inserted the provision found in paragraph 8 for *W. C. Bouck,* but neglected to alter or correct the first part of paragraph 8, dividing the residue into three parts. It is then contended that, although the residue is said to

have been divided into three parts, it is by four separate devises actually divided into four parts, and that each of these four parts should be equal, and that the court should ignore or strike out all words in the paragraph in question conflicting with this disposition of the property and this interpretation, because such words are subordinate indications of the intention of the testator and must yield to the larger and paramount indications to be derived from the fact that he gave the residue by four separate devises, designating each gift as a "part." They further endeavor to support this construction by evidence of extrinsic facts showing the testator's feelings and disposition to members and branches of his family and by his eccentricities of temper, language, writing, etc.

The cause has been presented upon able arguments by four distinguished counsel, supplemented by more than 420 pages of printed briefs, and we are brought almost to face with the condition described by MANSFIELD, C. J., in *Taylor v. Horde,* 1 Burr. 60, a much argued case, in which he said: "The more we read, unless we are very careful to distinguish, the more we shall be confounded." Or like the good Saint Athanasius, who in his efforts to interpret the Logos confessed that "the more he thought, the less he comprehended; and the more he wrote, the less capable was he of expressing his thoughts." We are urged by the learned counsel for respondents not to determine this appeal by applying rules of construction in the first instance, but to go straight to the discovery of the testator's intention from the will and surrounding circumstances, and to consult the rules afterward only to ascertain the correctness of the conclusion thus arrived at. In this position they have upon their side the authority of one who, notwithstanding some overmastering weaknesses, has been called the wisest of mankind:

"Whoever, unable to doubt, and eager to affirm, shall establish principles, proved, conceded and manifest (as he

thinks), and according to the unmoved truth of these, shall reject or receive others as repugnant or favorable; he shall exchange things for words, reason for insanity, the world for a fable, and shall be incapable of interpreting." Francis Bacon's Misc. Tracts.

Other saints since Athanasius, other jurists since MANS-FIELD, and many who were neither saints nor jurists, no doubt wrote and expounded in the confusion of overstudy, but lacked the keenness to discern it or the candor to confess it. Without consciousness of mental confusion, if it exist, and using rules of construction but as the builder uses the plummet and the square, we take up the will in question with a view to ascertain from it, in the first place, the testator's intention. In the words, "the rest residue & remainder of my estate I give bequeath & devise as follows," we discover an intention to close out, by gifts following these words, all of his remaining estate. In the words, "to be divided into three (3) parts," an intention that the plan of division was by thirds; in the words, "one thereof to *Mrs. Mary Ronan*," etc., an intention to here dispose of one third of the residue; "one thereof" means one of the three parts just mentioned, and this is strengthened by the three following references to this "part," in the first of which it is designated as "such one part," in the second of which it is designated as "said part," and in the third of which it is designated as "said one part." It was therefore firmly and constantly in the testator's mind, while writing this portion of his will, to here dispose of one third of the residue of his estate. The next disposition of "one of said three parts to my niece *Mrs. Martha Murray*," etc., is unmistakable in its meaning, both as indicating the intention of the testator to give one third of the residue of his estate to *Martha Murray* and as recognizing and emphasizing the prior division of the residue into three parts. So far there is not much room for doubt.

Is there anything in the subsequent bequests contained in this same paragraph to contradict or throw doubt upon the clear provisions of that part of the paragraph by which the first two-thirds of the residue is disposed of? For the first time in the paragraph omitting the identifying words, "thereof," "such," or "said," in referring to a part, which in itself has some significance, the testator devises "one part" to his sister Caroline Danforth "during her natural life," the remainder over to others, referring to this "one part" four times thereafter, but always as "the same," or "such share." The testator then bequeaths, "to my nephew *William C. Bouck* one part." It is somewhat significant that in all cases in which the word "part" is used in this paragraph it is identified by some descriptive precedent word as applying to something already mentioned except in the two cases of the bequests to Caroline Danforth, etc., and *William C. Bouck*. But the most significant thing is that, taking the whole paragraph 8 literally, there is no contradiction or confusion in it if we have no reference to extrinsic circumstances or to preconceived theories. For surely it does not contradict an express gift of one third of a given unit to one person and an express gift of one third of the same unit to a second person that a part (quantity not designated) of the same unit is given to a third person and a part (quantity not designated) of the same unit is given to a fourth person. There is therefore nothing inconsistent or contradictory in the language of this eighth paragraph. The meaning of the testator is expressed by unmistakable words with reference to the disposition of the first two-thirds of the residue, and it being the manifest intention of the testator to dispose of the whole residue by this eighth paragraph, the quantity represented by the "one part" to Caroline Danforth, etc., and the "one part" to *William C. Bouck* must be determined by the number of persons between whom division is made and the fraction remaining undisposed of.

This gives one sixth of the residue to Caroline Danforth for life, remainder as stated, and one sixth thereof to *William C. Bouck.* The same result is arrived at by the process of following the testator as he disposed of first one third of the residue, next one third of the residue, then a "part," without stating the value of this fraction, then another "part," without stating the value of this fraction.

In such case the intention of the testator, amply shown by the words of his will, must be held to have been to give equal parts of the last one-third to the two persons last designated. Testing this interpretation by approved rules of construction it will appear that it gives a sensible effect to all the words of the will. *Becker v. Chester,* 115 Wis. 90, 120, 91 N. W. 87, 98, 650. It gives the word "part" the same meaning throughout the paragraph; that is, a fraction. But it does not give the word "part" the same meaning as the five words, "one of said three parts," used in the bequest to *Martha Murray,* nor the same meaning as the nine words, "to be divided into three (3) parts; one thereof," etc., used in the bequest to *Mary Ronan* and Anna Eliza Martin. But "part" all through this paragraph is construed to mean a fraction, although in two instances, by apt words of reference, the testator designated the value of this fraction, and in two instances he did not. Rood, Wills, § 434, and cases in note 37. It rejects no words as repugnant or meaningless, for, as said in 1 Redfield, Wills, *448, par. 9:

"It seems to be agreed upon all hands, that words shall not be rejected as repugnant, unless it becomes impossible to give them any reasonable application to the subject matter; and then only, when it seems obvious *from the context,* taking in the entire scope of the will, that such result comes nearest the testator's intention."

This construction also finds the intention of the testator from the will itself. *In re Will of Kopmeier,* 113 Wis. 233, 89 N. W. 134; *Estate of Goodrich,* 38 Wis. 492; *Sherwood v. Sherwood,* 45 Wis. 357.

This construction reconciles all parts of the will, and it does not cut down the clear gift of the first two-thirds. *Goodwin v. Coddington,* 154 N. Y. 283, 286, 48 N. E. 729, and cases cited; *Roseboom v. Roseboom,* 81 N. Y. 356. At the same time it gives effect to the last provisions of paragraph 8 within the ordinary and usual meaning of the words used. Id. In short there is no rule of construction cited on either side in this contest with which the above construction in any wise conflicts. It is not in conflict with the case of *Effinger v. Hall,* 81 Va. 94, cited by respondents' counsel, or cases of that class, because there is nothing in the will in question to show that the "part" given to Caroline Danforth, etc., or the "part" given to *William C. Bouck,* was to be equal to the third part given to *Mary Ronan* and Anna Eliza Martin, or the third part given to *Martha Murray.* The will being before us, and there being no uncertainty, ambiguity, or contradiction in its provisions, it is the best evidence of the testator's intention (*Estate of Goodrich,* 38 Wis. 492), and we must therefore hold that this is not a case for striking out words or for adding words to a will or for searching for the testator's intention by proof of extrinsic facts or circumstances; but that the intention of the testator, as disclosed by the words of the will itself, was to dispose of the residue of his estate by giving one third to *Mary Ronan* and Anna Eliza Martin, in the proportion of two thirds of said one third to *Mary Ronan,* and one third of said one third, or one ninth of the whole residue, to Anna Eliza Martin upon the condition therein expressed; by giving one third of such residue to *Martha Murray;* by giving the net income of one half of the remaining one third, or one sixth of the residue, to Caroline Danforth for life; and upon her decease the corpus of this one sixth to *Sarah Brumaghim* and Kittie Hubbard or their respective heirs, share and share alike, they having both survived the testator, and one half of one third, or one sixth of the residue, to *William C. Bouck* upon the death of the mother of the latter, in the meantime paying

him the income therefrom. The amount of the residuary estate is to be ascertained in the usual way, and for the purpose of division among the devisees all the indebtedness mentioned in the will of Charles Bouck is to be considered part of the residue. The one sixth of the residue thus ascertained which is to go to *William C. Bouck,* and of which he is to have the income, is then to be diminished by subtracting therefrom the liabilities mentioned in the will from Charles Bouck to the testator, which will be thus satisfied and discharged, and the remainder will be the share of *William C. Bouck* of which he is to have the income during the life of his mother and the principal at the time of her death. The provision with reference to paying *William C. Bouck* such part of the income as he shall need for his own use, fairly construed, leaves the whole income of his portion to him, because it leaves him to determine what he shall need for his use, the kind of use not having been specified, and no person being appointed to determine the needs of *William C. Bouck. Conant v. Stratton,* 107 Mass. 474; *Gillen v. Kimball,* 34 Ohio St. 352; *Van Steenwyck v. Washburn,* 59 Wis. 483, 17 N. W. 289.

We cannot consider the error assigned relative to the permission accorded to the executor to apply to the circuit court. It is not in the nature of a final determination by the court below.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded to the county court with directions to enter judgment in accordance with this opinion.

On motion of the respondent *William C. Bouck* a rehearing was granted on June 20, 1907, upon the question, "What disposition shall the executor make of the bond and mortgage executed by Charles Bouck to decedent?"

The cause was reargued on September 26, 1907.

For the appellants *Mary Ronan* and *Martha Murray* the

cause was submitted on a brief signed by *Charles Barber* and *E. D. Ronan.*

For the respondent *Wm. C. Bouck* there was a brief by *Weed & Hollister,* and oral argument by *H. I. Weed.*

The following opinion was filed October 15, 1907:

TIMLIN, J.  In the opinion construing this will (*ante,* p. 161, 111 N. W. 573) it was said:

"The one sixth of the residue thus ascertained which is to go to *William C. Bouck,* and of which he is to have the income, is then to be diminished by subtracting therefrom the liabilities mentioned in the will from Charles Bouck to the testator, which will be thus satisfied and discharged, and the remainder will be the share of *William C. Bouck.*"

It appeared that the decedent at the time of his death and for a long time prior held a bond and mortgage executed by his brother Charles Bouck, who was the father of *William C. Bouck.*  The will provided:

"The following charges are made . . . upon the bequest of [to] *William C. Bouck* as follows; with the following indebtedness of his father Charles Bouck, a bond dated on or about the 14 of April A. D. 1886 . . . to pay eleven thousand six hundred and thirty-two $\frac{88}{100}$ in one year with interest upon which nothing has been paid on principal or interest, to which is to be added compound interest at the rate of three per cent. per annum upon the annual interest for each year since given.  Said bond is secured by mortgage upon said Charles Bouck farm in the town of Fultonham, Schoharie Co. N. York.  My executor not to enforce collection thereof until after the death of said Charles Bouck. . . .  The above to be charges upon said *William C. Bouck* said interest without reference to any statutes of limitation & whether lawful or not.  If the indebtedness of said Charles Bouck [exceeds] his one part or share, the same is to be made up to the other devisees & to be a charge on said bond & mortgage I hold against the said Charles Bouck."

On the first hearing there was no argument on this point, but in the former opinion it was assumed, upon the au-

thority of *Evans v. Foster,* 80 Wis. 509, 50 N. W. 410; *Gridley v. Gridley,* 24 N. Y. 130; *Brown v. Knapp,* 79 N. Y. 136; and *Adams v. Adams,* 14 Allen, 65, that the will having made this indebtedness of Charles Bouck to the testator a charge upon the bequest to *William C. Bouck,* by the acceptance of such bequest *William C. Bouck* became indebted to the estate of the testator in that amount, and that after deducting the same from the bequest to *William C. Bouck* the bond and mortgage against Charles Bouck should be satisfied and discharged. A rehearing was granted by this court, the reargument being confined to this proposition: "What disposition shall the executor make of the bond and mortgage of Charles Bouck?" Upon the argument for rehearing it is contended that the word "charges," used in the excerpt from the will above quoted, should not be given this significance; that the testator really meant that in making up the one-sixth interest bequeathed to *William C. Bouck* the bond and mortgage should be charged— that is to say, debited—to *William C. Bouck* as against his right to said one sixth, and so make part of his one-sixth interest. To enforce this claim it is pointed out that the testator did not expect this mortgage to be satisfied and discharged, because he provided in effect for the collection thereof after the death of Charles Bouck. It was further pointed out that the same language is used in the bequest to *Martha Murray,* who is charged with $400 which she had theretofore received from the testator, and in that instance the testator merely intended to make that $400 a part of her bequest, and that he must have, from the similar language employed with reference to the bequest to *William C. Bouck,* intended to make the bond and mortgage in question a part of the bequest to *William C. Bouck.*

No one has appeared to contest this claim, the appellants *Mary Ronan* and *Martha Murray* merely submitting this question to the court without argument or authority cited,

they having no interest in the construction of this particular paragraph of the will. We have concluded that it would more nearly accord with the intention of the testator, to interpret the word "charge" in the sense of debiting against the one sixth of the residue bequeathed to *William C. Bouck* for the purpose of making up this one sixth than to have the bond and mortgage satisfied.

We therefore hold this to have been the intention of the testator in this respect, and the executor is advised to regard, in the distribution of the estate, the opinion of this court as first announced herein in all respects, except that instead of satisfying and discharging the bond and mortgage above mentioned he assign and transfer the same to *William C. Bouck*. The taxable costs and disbursements of *William C. Bouck* on this rehearing to be paid by the executor.

Cassoday, C. J., took no part