# Rockford, Rock Island and St. Louis Railroad Co.

### *v.*

### Archibald T. Heflin.

1. CONSTRUCTION OF REMEDIAL STATUTES—*of the rule in regard to.* Where the language of a remedial statute is doubtful, or will bear two constructions, in promotion of the object of the general assembly the courts will give it such an interpretation as will best promote the remedy intended.

2. RAILROADS—*liability of, to fence their tracks—construction of the statute in regard to.* By a proper construction of the statute requiring railroad companies to fence their tracks within six months after the road is open for use, the companies are liable, under the statute, if they fail to fence

within six months after they begin to run trains on the track for construction purposes.

3. Nor does the fact that the road is still under the control of the contractors change the liability of the company in that regard.

4. New trial—*excessive damages.* An action against a railroad company for injury to stock occasioned by the negligence of the defendant, being in tort and sounding in damages, if the finding of the jury in such case is slightly in advance of what the court would have assessed the damages, still the verdict will not, for such reason, be disturbed.

Appeal from the Circuit Court of Warren county; the Hon. Arthur A. Smith, Judge, presiding.

This was an action brought by Heflin against the railroad company, to recover damages for the killing of a cow belonging to the plaintiff, on defendant's road. A trial resulted in a verdict in favor of the plaintiff, upon which the court rendered judgment. The company appealed.

Messrs. Stewart & Phelps, for the appellant.

Mr. William Marshall, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

It is first urged, that the evidence fails to show that the road had been open for use six months before the animal was killed, and that for the want of such proof the judgment of the court below should be reversed.

The evidence does show that the track had been laid from the city of Monmouth to and beyond the point where the injury occurred, and construction trains and several freight trains with freight had been run over the road more than six months before the animal was killed, and it was not unusual to carry passengers on their trains, and to charge them fare, more than six months before that time. From the time when the track was first laid, construction trains were constantly run, and the road was thus open to use.

The statute only declares that the road shall be open for use. It does not require it to be open to public or general use. Now this road was not only open, but was being constantly used for more than six months previous to the destruction of the cow.

The statute is remedial in its character, and where the language of such a statute is doubtful, or will bear two constructions, in promotion of the object of the general assembly the courts will give such an interpretation as to best promote the remedy. We can not suppose that the general assembly could have intended to postpone the remedy for months, or it may be years, after the company have constructed their track, and subject the citizen to all the evils intended to be removed, simply because the company have failed to fully equip their road, establish depots, ticket agents, time tables, and the various officers and appliances incident to a well equipped road. The danger may be as great and the injury as grave when the road is only used by the company and its employees whilst being constructed, as when regularly carrying passengers and freight.

The reason for the commencement of the computation of the time when the company begins to run its trains on the track for construction purposes, is the same as when the road is fully open for general business. This we think a fair and reasonable construction of our statute.

It is, however, urged that the road and the trains used in its construction were in the hands and under the control of the contractors to build the road until within less than six months of the occurrence complained of by appellee, and for that reason the company were not liable to fence; that the duty only attached at the expiration of six months after the road was turned over by the contractors to the company.

It has been held by this court that contractors for the construction of a railroad are the agents of the company that employs them. *Chicago, St. Paul and Fond du Lac R. R.* v. *McCarthy,* 20 Ill. 385; and the same rule is announced in the case

of *Gardner* v. *Smith*, 7 Mich. 410; and this court has also held that, where a railroad company leases its road or its cars to others, such lessees become the agents of the company, and it is liable for all acts of negligence by the lessees. *Ill. Cent. R. R.* v. *Finnegan*, 21 Ill. 648; and the same doctrine is announced in *Bay City and East Saginaw R. R. Co.* v. *Austin*, 21 Mich. 390.

Where a railroad company owes a duty to the public, it can not escape its performance by leasing its road, or by placing it in the control of others. But if this were not so, the company had its chief engineer in charge of the work as it was being constructed.

But, aside from the statute, we are not prepared to say that the evidence fails to show such negligence as renders them liable at common law. Appellee was exercising his rights in permitting the cow to run in his own field, and it was not his duty to fence the sides of the track.

It, we think, is fairly inferable from the evidence that, had the engine driver been on the lookout, he could have seen the danger in time to have stopped the train and prevented the injury.

Because the company had opened appellee's field, and laid its track through it, and even if the company was under no obligations to fence, it does not follow that it is absolved from all reasonable care, or that the employees or agents of the company may recklessly destroy the property of individuals.

The evidence fully sustains the verdict, and the question of the measure of damages was for the jury, and we are satisfied with their finding. Although it may be the duty of the owner of stock injured or killed under such circumstances to render it useful as far as practicable, still, the action being in tort, and sounding in damages, we will not reverse, even if the finding is slightly larger than we should have given had we assessed them.

There was evidence strongly tending to show that the cow was not fit for beef, and we presume it would be mangled and bruised, as it no doubt was, by the engine, even had it been otherwise in proper condition. And even if the jury failed to deduct the value of a few pounds of tallow that might have been saved by expending perhaps its value in preserving it, no court would be warranted in reversing for that cause.

No error is perceived in the instructions of the court. On the entire record, we think justice has been done, and the judgment of the court below is affirmed.

*Judgment affirmed.*