THE ST. LOUIS AND SPRINGFIELD RAILWAY COMPANY

*v.*

JOHN H. SMITH *et al.*

*Opinion filed June 23, 1905.*

1. EMINENT DOMAIN—*effect where petitioner refuses to stipulate what motive power it will use.* If the petitioner in a proceeding to condemn a right of way for general railroad purposes refuses to so frame its pleadings as to limit its motive power to electricity or to stipulate that it will not use steam, the defendants have the right to have their damages allowed with reference to any motive power the company has a right, under its charter, to use, and the court may refuse to permit the petitioner to prove it intends to use electricity.

2. SAME—*jury may consider that company is not required to fence road for six months.* In a proceeding to condemn a right of way for general railroad purposes, it is proper for the jury, in estimating the damages, to consider the fact that under the statute the company will not be required to fence its right of way until trains have been running upon its railroad for six months.

3. SAME—*when damages cannot be estimated on basis that petitioner will operate street railroad.* If the judgment in a condemnation proceeding will give the petitioner the right to use its right of way for general railroad purposes, it is not error to instruct the jury that they should not assess the defendant's damages nor offset benefits upon the theory that the petitioner will operate its road as a street railroad.

4. SAME—*jury may consider that petitioner may perform all the duties of a common carrier.* In assessing damages and estimating benefits in a proceeding to condemn a right of way for general railroad purposes, the jury may consider that the petitioner will be entitled to run both freight and passenger cars and to perform all of the duties pertaining to a common carrier.

APPEAL from the County Court of Madison county; the Hon. J. E. HILLSKOTTER, Judge, presiding.

TERRY & WILLIAMSON, for appellant.

WARNOCK & BURROUGHS, for appellees.

Mr. Justice Boggs delivered the opinion of the court:

This is an appeal from the judgment entered in the county court of Madison county establishing the right of the appellant company to take, by way of condemnation, certain real estate belonging to appellees for use as a right of way of a railway designed to be constructed by the appellant company, on a payment of the sum of $353.75 for the land taken and the sum of $2000 as damages to adjoining premises not taken.

We are unable to see that any error was committed by the court in its rulings upon the various questions relative to the sufficiency of the petition. The right of way asked to be condemned adjoins a public highway, and the appellees, by the various motions which called for these rulings, sought to defeat the right of condemnation on the ground the appellant company had chartered power to construct and operate what is commonly known and called a horse and dummy or street railroad, and that therefore the line of its road was restricted to the highway, according to the doctrine announced by this court in *Harvey* v. *Aurora and Geneva Railway Co.* 174 Ill. 295, there being no impediment or obstruction to the construction of the said railway in and along the highway. As finally amended the petition was deemed sufficient to show the appellant company had the right to take the property, by condemnation, for the uses and purposes of a railroad to be operated by steam or other motive power, and the appellees were required to answer the petition, and the trial proceeded upon this theory. Of this the appellant company can have no ground of complaint, for it persistently refused to so frame its petition as to show that it did not intend to use steam as a motive power or to stipulate that it would not employ steam as a motive power. The petition, as finally framed under the rulings of the court, upheld the power of the appellant company to condemn the land for the uses of a railroad to be operated by any motive power. This enhanced

the damages of the appellees, but the appellant company was unwilling, by pleading, stipulation or otherwise, to limit its right as to the motive power to be employed in the movement of its cars, and the cause properly went to a hearing before a jury on that theory.

In presenting the proof the appellant company sought to show that it expected and intended to use electricity as the motive power, but the court would not permit it to do so. This ruling was correct, for the reason the judgment of condemnation which the appellant company, by its course in framing the pleadings and in refusing to stipulate that it would not use steam power and would only use electricity, would become entitled to have entered in its favor, would be such as that the company would not be in any manner restricted as to the motive power it would employ.   Hence the damages to the land not taken and the benefits thereto arising from the construction of the road were properly to be estimated with reference to any use to which the petitioner, under its charter, would be at liberty to apply its railroad when built. *Lieberman* v. *Chicago Rapid Transit Railroad Co.* 141 Ill. 140; *Chicago and Milwaukee Electric Railroad Co.* v. *Diver*, 213 id. 26.

Instruction No. 2 given for the appellees read as follows:

"The court instructs the jury that under the law the railroad company is not required to fence its right of way until its railroad has been in actual operation, with trains running over it, for the term of six months, and it is proper for you to consider this fact in estimating the plaintiff's damages."

Two complaints are urged to this instruction: First, that it would mislead the jury to believe that the appellant company was not required by the statute to fence its railroad right of way until six months after it had begun running its trains on its tracks; and second, that the instruction erroneously assumes that damages will necessarily result if the land not taken be left unfenced for six months.   In *Rock-*

*ford, Rock Island and St. Louis Railroad Co.* v. *Heflin,* 65 Ill. 366, we construed the statute requiring the right of way of railroads to be fenced, and held that the computation of the period of six months began when the company commenced to run its trains on the tracks for construction or other purposes. As to the second ground of complaint, it appeared from the evidence, without dispute, that the right of way extended to within seven feet of the front of appellees' dwelling, and that for that reason the dwelling and outhouses must be moved at great cost; and, moreover, that until the right of way should be fenced, the barn lot, the yard about the dwelling house of the appellees, their garden, pasture and all their fields, would be unprotected; that their own domestic animals could not be kept on their premises or the animals of other persons excluded. That damages would be occasioned to property not taken was indisputably proven and was an unquestioned fact. No injury could have been occasioned by the mere assumption of this undisputed fact.

The objection preferred to instruction No. 3 is, that the appellant company, by its petition, sought to condemn appellees' land for railroad purposes only, and that by the judgment of condemnation it will have the right to use the land sought to be condemned for general railroad purposes, and that it was error to advise the jury, as did this instruction, that they should not "assess defendants' damages or offset benefits upon the idea that petitioner will operate its railroad as a street railroad." There was no error in respect of these matters in the instruction. The land was being condemned for general railroad purposes, and in assessing the damages of the appellees or in considering benefits it was the duty of the jury to estimate the damages with reference to the right of the company to devote the right of way to any of the uses to which it might lawfully apply it. Damages and benefits could not be estimated upon the theory that the appellant company would not use steam as a motive power, because the

judgment of the court would invest it with the right to op-
erate a general railroad and use locomotives which used coal
and generated steam.

It was entirely proper to instruct the jury, as was done
by instruction No. 6 given for the appellees, that the appel-
lant company would have the right to haul along the right of
way to be condemned, both freight and passenger cars, and
as many of either of such cars as it desired, and to perform
all of the duties pertaining to a railroad as a common carrier.
This information was proper for consideration by the jury
in arriving at their verdict as to the damages to be allowed
to the appellees.

We have examined the evidence with reference to the
complaint that the amount allowed for damages to lands not
taken is unsupported by the proofs. Appellees owned about
forty-four acres of valuable land. It is triangular in shape,
the apex being at the north and the hypothenuse from thence
to the south-west corner of the tract. This side of the farm
abutted on a public highway, and the right of way consisted
of a strip fifty feet in width (except where narrowed to forty
feet to avoid taking a part of the dwelling) adjoining the
highway. The dwelling house was located within forty-seven
and one-half feet of the margin of the highway. The barn,
cow stables and barn lot well stood to the north, or slightly
north-east, of the dwelling and within one hundred feet of
the highway. South-west of the dwelling a garden extended
to the highway, as did also the pasture lot, which adjoined
the garden. The remaining land was in cultivated fields, each
of which abutted on the highway. The house was a seven-
room, story-and-one-half frame building, twenty by forty-
eight feet in size, with a cellar, a portico in front and kitchen
in the rear, with a porch about it and a cistern under the
porch, and to the rear of the house was a well, smoke house,
wash house and other out-buildings. The strip of land con-
denmed for the right of way adjoined the highway the full

length of the farm, was of the width of fifty feet, except that in the yard in front of the dwelling and across the garden it was reduced to forty feet. As so reduced in width the right of way covered the front yard to within seven and one-half feet of the portico of the dwelling house. In that part of the front yard condemned for the right of way were three hard-maple trees, one ash tree, a double-blooming crab tree, one pecan tree and an apple tree, the shade and ornamental trees being about twenty years old, vigorous and healthy. The dwelling house and out-houses about it, it was shown, it would be necessary to remove, and that the cost thereof would be not less than $1000. In moving these buildings it appeared that twenty-four other trees would be destroyed, being one walnut tree, two cherry trees, three apple trees, the others being peach trees, the fruit trees being of the age of five years and ready to bear their first crop. On the strip to be condemned stood ninety rods of hedge fence, and also the front fence of the yard, garden and horse and barn lot. The dwelling, barn, etc., stood at the northern end of the farm, near the apex of the tract of land, which would increase the difficulty of moving and re-arranging the buildings. The public highway could only be reached from the dwelling house, barn or any part of the farm by crossing over the right of way and tracks of the appellant company's railroad. The jury visited and inspected the farm, and the amount allowed for damages was fairly within the range of the estimate of the witnesses who testified with reference thereto. Manifestly the verdict is not palpably wrong, and there is no reason we should refuse to approve the verdict of the jury and the judgment of the court.

The judgment is affirmed.          *Judgment affirmed.*