NORDEAN, by guardian *ad litem,* Appellant, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Respondent.

*February 21—March 12, 1912.*

*Statutes: Construction: Railroads: Fences, when required: "Commencing to operate."*

1. Upon a question of statutory construction precedents are an unsafe and unsatisfactory guide, because they rarely present precisely similar language relating to the same subject matter and in the same connection and surroundings.
2. Consideration of the purpose and object of the statute is a recognized aid to interpretation if, after examining the statute itself and applying it to the subject matter regulated thereby, there still exists an ambiguity.
3. But if a statute standing by itself, without resort to rules of interpretation, conveys a definite and clear impression when applied to the subject regulated, that is the best evidence of its meaning.

4. The rule that dropping words out of a statute in a revision and re-enactment thereof indicates an intent to change the statute in that respect, cannot prevail against the plain meaning of the statute as rewritten, whether such words be simply omitted or a new form of expression be substituted therefor.

5. A railroad company does not commence to "operate" its road, within the meaning of sec. 1810, Stats. (1898), requiring it to fence its right of way within three months after so commencing, until it commences to use the road for transporting freight or passengers as a common carrier.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *John Brennan* and *Charles Line,* and oral argument by *Mr. Brennan.*

For the respondent there was a brief by *Luse, Powell & Luse,* attorneys, and *Alfred H. Bright* and *John L. Erdall,* of counsel, and oral argument by *L. K. Luse.*

TIMLIN, J.    The complaint in this action showed that the plaintiff was ten years of age and appeared by guardian *ad litem,* and that on October 23, 1909, and for a long time prior to that day the defendant railway corporation was, ever since has been, and now is, operating and running a railroad for gain and profit, running engines and cars over and upon its tracks in Douglas county, and that its right of way was unfenced.    The answer contains a number of specific admissions, followed by a general denial, among them the admission that the right of way was not fenced.    The injury in question occurred on the 23d of October, 1909.    The negligence averred is in failing to erect, build, and maintain fences along its track on both sides thereof, and in other things not relevant here.    As we construe the pleadings there is no admission that the defendant was operating the railroad in question for three months prior to October 23, 1909.

The injured boy resided with his parents in the city of Superior and had wandered in boyish play with a companion of

about his age some distance into the country and on to the railroad track at the place of accident, where he evidently attempted to take hold of a passing freight train for some purpose. There was no fault or negligence on the part of the train crew. Plaintiff was not injured upon any public or other crossing place, but stood on the loose gravel next to the rail when the train came. The loose gravel slipped in under and his right leg got on the rail and two wheels ran over it. He does not know exactly what happened. After proof of the injury and proving that the place in question was not upon any depot grounds, the plaintiff rested. The defendant proved that it began to haul freight into Superior on this track on September 10, 1909, and that was the first operation for business; that the first passenger service commenced November 29, 1909. The railroad in question had just been built and was not entirely completed.

On motion the circuit judge directed a verdict for the defendant upon the ground that the railroad had not been in operation for three months prior to the time when the boy was injured, hence the obligation to fence had not arisen. There was a change of attorneys for plaintiff. The plaintiff moved to set aside the verdict and for a new trial on the ground that the verdict was contrary to the evidence and to the law and on the ground of newly discovered evidence which the plaintiff's former counsel, through mistake, inadvertence, and inexcusable neglect, failed to discover and produce at the trial. On this motion he also asked to be allowed to make and file an amended complaint. The moving papers averred that the guardian was advised by plaintiff's attorney that all that was necessary to fix the liability of the defendant was to show that the railroad was not fenced and was not used by the defendant for depot grounds at the time and place of the injury. She afterward learned that it was necessary to prove that the defendant commenced to operate its railroad more than three months prior to the time of the

injury. That it was operated for more·than three months prior to the injury she has since discovered to be the fact as shown by certain affidavits annexed to hers. The first of these affidavits is by the former attorney for plaintiff, in which he states that he had learned since the trial that the defendant·commenced on July 6, 1909, to operate its railroad at the point thereon where the plaintiff was injured, and continued since. The next by Gust Anderson, made apparently on personal knowledge, is to the effect that the defendant on or about July 6, 1909, commenced to operate its railroad between a point in the city of Superior where the railroad crosses Sixty-fourth street and a point southerly therefrom where the said railroad crossed the track of the Great Northern Railway in the town of Superior, covering the place of accident, and continued ever since running engines, cars, and trains thereon. Four others depose to the same effect. The amended complaint which was offered on the motion avers, among other things, on information and belief, "that on or about said 3d day of July, 1909, and for more than three months prior to the said 23d day of October, 1909, the defendant commenced to operate its railroad, from said city of Superior south, through the said town of Superior, and past the point on said railroad, in said town of Superior, where the plaintiff was injured, by running over and upon the track of said railroad locomotive engines, cars, and trains."

The court allowed the amended complaint to be filed, but denied the motion for a new trial upon the grounds stated in the order,

"(1) That no error of law was committed upon the trial; (2) that the affidavits regarding the discovery of new evidence do not show reasonable or proper diligence on the part of the plaintiff or his attorneys in endeavoring to discover such evidence and to produce it upon the trial; (3) that the law does not require a newly built or constructed railroad to be fenced until three months after the commencement of the operation of the railroad for business other than mere construc-

tion work; (4) that the only ground of surprise for counsel for plaintiff upon the first trial was the ruling of the court that sec. 1810 did not make the defendant responsible for failure to fence its railroad until three months after it commenced to operate the same; (5) that the mistake of counsel for the plaintiff upon the first trial, if any, was a mistake of law in construction of sec. 1810."

Several interesting questions are discussed by counsel, but the principal controversy, and that which determines the case on this appeal, relates to the meaning of the words "to operate the same" found in sec. 1810, Stats. (1898), in the following sentence: "All roads hereafter built shall be so fenced and such cattle-guards be made within three months from the time of commencing to operate the same, so far as operated." Does the word "operate" mean the running of trains upon the finished or partially finished portions of the new roadbed for construction purposes, or does it mean such running in the transportation of goods or passengers? The affidavits upon the motion for a new trial do not specify which of these the affiants meant by operation. The amended complaint evidently relates to construction work. If the statute means operation in the regular business of the road, carrying goods and passengers, the affidavits are not sufficiently explicit to overcome the evidence given at the trial, and besides it is conceded by counsel upon the oral argument that if the latter is the true meaning all his other grounds of appeal must fail. A masterful argument is submitted for appellant consisting of, first, a reference to the following precedents bearing upon the meaning of the word "operate:" *Glandon v. C., M. & St. P. R. Co.* 68 Iowa, 457, 27 N. W. 457; *Chicago, K. & W. R. Co. v. Hutchinson,* 45 Kan. 186, 25 Pac. 576; *Houston & G. N. R. Co. v. Meador,* 50 Tex. 77; *McKivergan v. Alexander & E. L. Co.* 124 Wis. 60, 102 N. W. 332; *Chicago, K. & W. R. Co. v. Totten,* 1 Kan. App. 558, 42 Pac. 269; *Rockford, R. I. & St. L. R. Co.*

*v. Heflin,* 65 Ill. 366; *Holden v. R. & B. R. Co.* 30 Vt. 297; *Hardt v. C., M. & St. P. R. Co.* 130 Wis. 512, 110 N. W. 427; *Meo v. C. & N. W. R. Co.* 138 Wis. 340, 120 N. W. 344. Second, a contention that the purpose of the act is to protect persons who might be on or near the track, and such persons are in as much danger from the operation of a construction train as from a freight or passenger train run for hire, so that the purpose of the statute would be defeated by denying redress to those injured by the construction train. Third, an argument to the effect that sec. 1810 is a revision of secs. 30 and 32 of ch. 119, Laws of 1872; ch. 328, Laws of 1878; and ch. 193, Laws of 1881. Prior to the revision the first two chapters had been construed in *Curry v. C. & N. W. R. Co.* 43 Wis. 665, to be each in force independently but to be cumulative, one penal and the other remedial. In ch. 328, Laws of 1878, the statute read: Operating "in carrying goods and passengers" for two years through inclosed lands. Dropping out the words "in carrying goods and passengers," by the revision, indicated a legislative intent to remove that limitation by repeal and to include in the revision both kinds of operation. Precedents are then cited regarding the effect of dropping out such descriptive words and holding that this is an indication of legislative intention to change the statute in that respect so that the word "operate," found in the new or revised section, should no longer be subject to that limitation, but extend to all manner of operation, whether for construction or for commercial purposes. Citing *State v. Welch,* 37 Wis. 196; *State ex rel. Ohlenforst v. Beck,* 139 Wis. 37, 119 N. W. 300; *Bentley v. Adams,* 92 Wis. 386, 66 N. W. 505; and other cases.

. With reference to the first group of precedents cited by appellant's counsel it may be said that, where the sole inquiry relates to the intention of a writer to be derived from a writing containing neither technical nor trade terms nor fixed symbols, precedents are weak and unsatisfactory, except when

they relate to the form of instruments, which form may be employed to bring the matter in hand within some established rule.   But in other cases they rarely if ever present the same words arranged in the same order in the same kind of sentence relating to the same subject and surrounded by like supplementary or explanatory writings, paragraphs, or sections, and illustrated by other instances of usage in the same instrument or statute.   *Sisson v. Seabury,* 1 Summ. 235; *Wentworth v. Fernald,* 92 Me. 282, 42 Atl. 550; *Jones v. Hunt,* 96 Tenn. 369, 34 S. W. 693; *In re Morgan,* [1893] 3 Ch. 222; *Thurber v. Battey,* 105 Mich. 718, 63 N. W. 995; *Grey v. Pearson,* 6 H. L. Cas. 61; *Littig v. Hance,* 81 Md. 416, 32 Atl. 343; *Lessee of Williams v. Veach,* 17 Ohio, 171; *State ex rel. Bashford v. Frear,* 138 Wis. 536, 120 N. W. 216.   Without such similarity they may sometimes mislead rather than guide aright, where the sole inquiry before the court is what was the intention of the writer.   Nor can the fact that the construction train is as destructive as the commercial train, and that the object of the statute is to protect life and property, control its interpretation in this respect.   Such consideration is a recognized aid to interpretation when we are considering the scope of the statute, and, after a survey of the writing and application thereof to the subject of the writing, there still exists an ambiguity.   But this might be an unsafe guide in the determination of when the statute went into effect.   So, although dropping the words out of a former statute, and its revision and re-enactment without those words, is a good indication that the legislature intended to change the statute to that extent, this cannot prevail against the apparent meaning of the statute as rewritten or as against a statute in which, by a different form of expression, the legislature again carried the former requirement into the statute.   The construction given to the word "operating" as found in sec. 1816, Stats. (1898), in *McKivergan v. Alexander & E. L. Co.* 124 Wis. 60, 102 N.

W. 332, is not decisive of the meaning of the words "commence to operate" in sec. 1810.  The former statute relates to a kind or description of work in which an employee might be injured, while the latter purports to specify a definite time in the existence of the railroad at which the three months' limitation begins to run.  Before resorting to such rules of interpretation we must turn to the words of the statute in question (*In re Will of Bouck*, 133 Wis. 161, 111 N. W. 573, 113 N. W. 452).  If this statute standing by itself, without resort to rules of interpretation, conveys a definite and clear impression when applied to the subject matter regulated thereby, this is the best evidence of the meaning of the statute.  We all appreciate, and other statutes on this subject recognize, a material distinction between construction and operation of a railroad.  In construction, beginning with track laying, engines and cars are used and moved, following up the track laying, for the purpose of delivering the rails, and next for ballasting, reducing or raising the grades in certain places, or completing fills.  A portion of the road varying in length from day to day is partially completed in track laying, and the road may at this time be said to be in operation for construction purposes.  It is not an operation for the purpose of transporting goods and passengers.  It is clearly not in operation within the meaning of secs. 1799 and 1799a, Stats. (1898), which require railroad corporations operating a road to receive freight and deliver a bill of lading and transport the same over its road.  Taking up the sentence in question we first discover that it apparently applies to roads built, not to those in process of building.  Next, that it contemplates or includes a road a portion of which is operated; and third, that the three months must begin at some definite time as to the whole road or as to that portion operated.  There is in the sentence a noticeable antithesis between the words "built" and "commencing to operate."  If we substitute the alleged synonyms this becomes apparent.  "All roads hereafter built

shall be so fenced . . . within three months from the time of commencing to complete the construction by the use of trains so far as the road is completed or operated in that way." The misfit is apparent. On the other hand it does not suggest any confusion of thought to read the sentence in question: All roads hereafter built shall be so fenced . . . within three months from the time of commencing to use the road for the transportation of freight and passengers so far as the road is used for that purpose. There must have been in contemplation some definite time for the commencement of the three-months period of grace, consequently some definite way of ascertaining what portion of the road was then operated or in operation. This could not be done if train construction work is "operating" within the meaning of the statute. For train work in construction begins with track laying and progresses from day to day, sometimes with uniformity, sometimes not, so that it would be difficult or impossible to tell whether any given half mile of road had been three months in this kind of operation or not. The statute relates to a built road, to a kind of operation which follows building, and has a definite time of commencement as to the whole or some definite section of the road. It must mean either operation in construction or operation in the transportation of freight and passengers. It forbids us to divide operation in construction. We must either include all construction train operation or exclude it all. There is no warrant for dividing this, because the statute mentions only a single definite condition. Therefore we must begin with track laying, being the first train construction service, or we must begin with operating as a common carrier. The road is not built when the first is begun: it is when the second is begun; the first furnishes no definite starting point as to any section of the road capable of exact identification; the latter does. Many other statutes relating to railroads use the words "operating" in the sense of transporting freight and passengers and so as

to exclude construction work.    Secs. 1799, 1799*a*, 1801, 1802, 1820, Stats. (1898).    Operating a road is not like operating cars or engines on a road.    The words "commencing to operate," applied to a road, suggest a completed road and exclude construction work.

We are convinced that it was the legislative intention, apparent on the face of the statute, that the railroad company commenced to operate when it commenced to transport freight or passengers as a common carrier, and that the operation of trains in construction work cannot be taken as the point of commencement, although after having commenced operations and after three months had elapsed it would be liable for injuries caused by a construction train engaged in making repairs as well as by any other train under sec. 1810, Stats. (1898).    It follows that the judgment and order denying a new trial should be affirmed.

*By the Court.*—Order and judgment affirmed.