GLADSTONE EQUITY EXCHANGE COMPANY, a Corporation, et al., Respondents, v. WALKER D. HINES, Director General of Railroads, and M. L. Day, Appellants.

(182 N. W. 763.)

**Railroads — fire from cook car held not from "operation of railway" within exemption from liability.**

1. A lease of a portion of a railroad company's right of way provided that the lessee assumed all risk of loss, damage, or destruction to buildings or contents, or to any other property brought upon or in proximity to the leased premises, without regard to whether such loss was occasioned by fire or sparks from locomotive engines, or other causes incident to or arising from the movement of locomotives, trains, or cars, misplaced switches, or in any respect from the operation of a railway; or whether it was the result of negligence or misconduct of any person in the service of the company. *Held*, that the clause "operation of a railway" in such lease does not apply to, and relieve the company from liability for, a loss occasioned by a fire set by sparks emitted from a stovepipe in a cook car, which the company placed close to the elevator of the lessee, and permitted to so remain after the station agent had been notified of the danger to which such elevator was being subjected.

**Railroads — trial — instruction on negligence causing fire correct as to Director General, but inapplicable to codefendant station agent.**

2. An instruction relating to negligence in the manner of operating the stove in the cook car is, for reasons stated in the opinion, *held* to be erroneous as to the defendant Day, but correct as to the defendant Director General of Railroads.

**Sufficiency of instructions and findings.**

3. Other assignments of error relating to instructions, and the sufficiency of the findings of the jury considered and *held* to be without merit.

Opinion filed April 4, 1921.  Rehearing denied May 10, 1921.

From a judgment of the District Court of Stark County, *Lembke, J.,* defendants appeal.

Affirmed as to the defendant Director General of Railroads and reversed as to the defendant Day.

*Young, Conmy, & Young* and *W. F. Burnett,* for appellants.

When plaintiff claims damages because of fire, which he avers was started through the neglect to observe due care and caution, his proofs must establish the charge. Mere speculation or possibility will not do. Sheldon v. R. Co. 29 Barb. 228; Longabaugh v. R. Co. 9 Nev. 296; Smith v. R. Co. 27 Mo. 295; Omaha R. Co. v. Okarj (Neb.) 23 L.R.A. 509, 53 N. W. 970; Kilpatrick v. Richardson (Neb.) 56 N. W. 481; White v. R. Co. 1 S. D. 330, 9 L.R.A. 824, 47 N. W. 146; Sheldon v. R. Co. 29 Barb. 228.

A lease by a railroad company of a portion of its right of way upon condition that the company shall not be liable for any damage to buildings or personal property situated thereon by reason of fire originating from its locomotives, or for damage resulting from the negligence of its employees or agent, is not void, as against public policy. 62 Fed. 904; Hartford F. Ins. Co. v. Chicago, M. & St. P. R. Co. 70 Fed. 201, affirmed in 175 U. S. 91; Blitch v. Central of Georgia R. Co. (Ga.) 50 S. E. 945; Kennedy v. Iowa State Ins. Co. (Iowa) 91 N. W. 831.

The company would not be liable for damages to property placed upon its right of way by strangers without its permission, caused by fires occasioned by its want of ordinary care. James Quirk Mill. Co. v. Minneapolis & St. P. L. R. Co. (Minn.) 107 N. W. 742; Wabash R. Co. v. Ordelheide (Mo.) 72 S. W. 684.

*T. F. Murtha,* for respondents.

It was for the jury to pass upon the case of the fire and the question of negligence. McFarland v. Sayen (Mich.) 120 N. W. 794.

"The question of negligence is ordinarily one for the jury, and when negligence is sufficiently shown liability follows." American Ice Co. v. Lumber Co. (Me.) 32 L.R.A.(N.S.) 1003 (citation from pp. 1004, 1006); Hinds v. Barton, 25 N. Y. 544; John Mouat Lumber Co. v. Wilmore, 15 Colo. 136, 25 Pac. 556; Webster v. Symes, 109 Mich. 1, 66 N. W. 580.

"If upon a fair construction that a reasonable man might put upon the evidence, or any inference that might reasonably be drawn therefrom, the conclusion of negligence can be arrived at or justified, then the defendant is not entitled to a nonsuit, but the question of negligence should go to the jury." Huffman v. Bosworth, 25 N. D. 22; Olson v. Riddle, 22 N. D. 144 (whole case is good upon question of the province of the jury); McCaffery v. R. Co. 22 N. D. 544; 29 Cyc. 461, 463.

If defendant wished to claim that elevator company was a trespasser or mere licensee upon the premises occupied by its buildings, such defense would have to be pleaded,—it was not pleaded, and therefore is not avoidable. 33 Cyc. 1343 (II).

The fact that the cook car in this case was on wheels does not alter the case. It was not being used in operating the railway, and does not fall within the provisions of the lease. R. Co. v. Blaker (Kan.) 75 Pac. 71; Ins. v. Foley Bros. 169 N. W. 793; Ins. v. R. Co. (Ky.) 99 Am. St. Rep. 313.

The fire provisions of the lease are against public policy and void; these provisions attempt to interfere with and abrogate by contract many provisions of statute, in which the public is interested, regulating public warehouses and carriers. Quirk Mill. Co. v. R. Co. (Minn.) 107 N. W. 742.

CHRISTIANSON, J. Plaintiffs brought this action to recover damages occasioned by the destruction by fire of the elevator belonging to the Gladstone Equity Elevator Exchange on August 26, 1918. The elevator was situated on the right of way of the Northern Pacific Railway Company at Gladstone in Stark county in this state. It is alleged that the elevator was burned because of the negligence of the defendants,

the Director General and his agent, Day.   The complaint alleges that the Gladstone Equity Elevator Exchange was the owner of the property destroyed; that such property was of the value of $25,000; that the various insurance companies named as parties plaintiff had written insurance policies in various amounts upon the property and have paid losses aggregating in all $12,579.26.   Judgment was demanded in favor of each of the insurance companies for the amount paid under the insurance policies, and in favor of the Gladstone Equity Elevator Exchange for the difference between the alleged value of the property and the aggregate amount which it had received from the different insurance companies.

The defendants, in their answer, denied any negligence, and denied that they set the fire which destroyed the elevator.   Thy further alleged that the elevator was placed upon, and occupied, the right of way under a certain lease by which the elevator company assumed the risk of fire arising from or incident to the operation of the railroad. The case was tried to the court and a jury, and at the request of plaintiffs' counsel was submitted to the jury for a special verdict.   Judgment was entered in favor of the insurance companies for the amounts which they had paid under the respective insurance policies, and in favor of the Gladstone Equity Elevator Company for the sum of $7,-779.42, which latter amount the jury fixed as the value of the property destroyed, over and above the sums which had been received by the elevator company from the various insurance companies.   Defendants have appealed from the judgment so entered.

Plaintiff offered proof showing that some days prior to August 26, 1918, the defendant Director General caused a string of about ten box cars to be placed on the spur track on which the elevator was located, within a few feet of said elevator and a shed adjacent thereto. That said cars were used for housing a certain crew of workmen engaged in repairing bridges along the railroad, and that one of the cars was used as a cook car.   That in said car the servants of the defendant used a stove, with the stovepipe going through the roof, and extending a short distance above the roof.   That when there was a fire in the stove, and especially when the fire was started, sparks were emitted from the stovepipe.   That the stovepipe was a distance of only about 50 feet from the buildings of the plaintiff elevator company; that upon two

occasions, the manager of the elevator company called upon the defendant Day,—who was the station agent at Gladstone,—and requested that said cars be removed for the reason that the fire emitted from the stovepipe endangered the buildings of the plaintiff elevator company. The manager, Robertson, testified that on the day of the fire,—about 20 minutes before the fire started,—he heard the cook rattling the griddle on the stove; that he went outside and saw sparks and flames shooting out of the chimney on the cook car. There was also evidence introduced by the plaintiff tending to show that the wind blew in a direction, so that sparks from the stovepipe would fall upon the buildings of the plaintiff elevator company at the place where the fire started. The defendants' testimony showed that there were other outfits in the yards at Gladstone, and that other available places on the tracks were occupied by these other outfits. The defendant Day positively denied that the manager of the elevator company ever requested that the cars be removed; or notified him that there was any danger to the buildings of the elevator company from sparks emitted from the stovepipe. The evidence adduced by the defendants further was to the effect that fire had not been started in the stove at the time that the plaintiff's buildings caught on fire; that the prevailing winds were in such direction that the sparks would not have fallen in the place where the fire started, and that the cook car was at least 80 feet distant from the east edge of the elevator shed, on the roof of which the fire originated. The defendants also put in evidence an agreement under which the spur track was constructed and the lease under which the right of way was occupied. And in connection with these two instruments, it is contended that the plaintiff elevator company was using the leased premises for storing paint, gasolene, farm machinery, etc.,—all contrary to the terms of the lease. And that the lease contained a provision whereby the plaintiff elevator company assumed all risk of injury by fire incident to the operation of the railroad.

The special verdict was as follows:

Q. 1. What was the value, August 26, 1918, of all the property of the plaintiff Gladstone Equity Exchange destroyed by fire August 26, 1918?

A. $20,358.68.

Q. 2. Was the fire which destroyed the elevator and other property

of the plaintiff Gladstone Equity Exchange communicated to the elevator by sparks from the stovepipe of the cook car?

A. Yes.

Q. 3. If you answer question numbered 2 in the affirmative, did the leaving of the cook car and its use, at the place where it was located on August 26, 1918, at the time of the fire, constitute negligence on the part of the defendant Walker D. Hines, Director General of Railroads?

A. Yes.

Q. If you answer question numbered 2 in the affirmative, did the leaving of the cook car and its use, at the place where it was located on August 26, 1918, at the time of the fire, constitute negligence on the part of the defendant M. L. Day?

A. Yes.

Q. 5. If you answer question 3 in the affirmative, was such negligence gross negligence?

A. No.

Q. 6. If you answer question numbered 4 in the affirmative, was such negligence gross negligence?

A. Yes.

Q. 7. If you answer question numbered 2 in the negative, was the fire which destroyed the elevator and other property of the plaintiff Gladstone Equity Exchange communicated to the elevator by sparks from the locomotive which passed through Gladstone about 4:11 P. M. August 26, 1918?

A. X.

Q. 8. If the plaintiffs are entitled to recover in this action, should the plaintiffs recover interest from the date of their respective losses?

A. Yes.

(Questions 9 to 18 inclusive relate to the amount of losses paid by the various insurance companies carrying policies, obtained by the plaintiff elevator company, on buildings and property destroyed. Under the evidence there is no question but such losses were paid by the respective insurance company, and that they amounted to the sums found by the jury.)

Q. 19. What was the value, if any, on August 25, 1918, of the property of the plaintiff Gladstone Equity Exchange, destroyed by fire on

that day, over and above the amounts of insurance received by said plaintiff Gladstone Equity Exchange from the various insurance companies under the insurance policies offered in evidence in this case?

A. $7,779.42.

Q. 20. Did defendant Day know prior to August 26, 1918, that the site of the plaintiff Gladstone Equity Exchange was being used by said Gladstone Equity Exchange as a place of storage and sale of machinery, machine extras, paint, glass, twine, etc?

A. Yes.

Q. 21. Did defendant Walker D. Hines, Director General of Railroads, know prior to August 26, 1918, that the site of the plaintiff, Gladstone Exchange was being used. by said Gladstone Equity Exchange as a place of storage and sale of machinery, machine extras, paints, glass, twine, etc?

A. No.

Appellants contend that under the terms of the loss and trackage agreement, the court erred in not directing a verdict in their favor and in denying their motion for judgment on the special verdict.

The contract under which the spur track was built contains the following provision:

"The applicant understands. that their premises and property will be in dangerous proximity to the track, and will be in danger of injury or destruction by fire or other causes incident to the operation of the cars and engines over it, and the applicant understands such dangers, and accepts this contract subject to the same. It is therefore agreed as one of the material considerations and inducements, without which this contract would not be made, that the applicant assumes all risk of loss, damage, or destruction to buildings or contents, or to property of any kind located or stored along the track by the applicant, or by any other person or party, occasioned by fire or sparks from locomotive engines, or other causes incident to or arising from the movement of locomotives, trains, or cars, and without regard to whether such loss or damage by the result of negligence or misconduct of any person in the employ or service of the railway company, or of defective appliances, engines, or machinery. And the applicant shall save and hold harmless the railway company from all damage, claims, and losses herein specified."

The lease under which the elevator is occupying the right of way contains the following provision:

"It is understood by both parties hereto that the leased premises are in dangerous proximity to the tracks of the railway company, and that persons and property on the leased premises will be in danger of injury or destruction by fire or other causes incident to the operation of a railway, and the lessee accepts this lease subject to such dangers. It is therefore agreed, as one of the material considerations of this lease without which the same would not be granted, that the lessee assumes all risk of personal injury to the lessee, and to the officers, servants, employees, or customers of the lessee while on said premises, and all risk of loss, damage, or destruction to buildings or contents or to any other property brought upon or in proximity to the leased premises by the lessee, or by any other person with the consent or knowledge of the lessee, without regard to whether such loss be occasioned by fire or sparks from locomotive engines or other causes incident to or arising from the movement of locomotives, trains, or cars, misplaced switches, or in any respect from the operation of a railway, or to whether such loss or damage be the result of negligence or misconduct of any person in the employ or service of the railway company, or of defective appliances, engines, or machinery. And the lessee shall save and hold harmless the railway company from all such damage, claims, and losses."

It is contended by the respondent that these provisions are inapplicable for the reason that at the time of the fire the railroad was under Federal control, and the industrial sites were under the control of the railroad company; that it was the servants of the Director General, and not the servants of the railroad company, whose negligent acts caused the destruction of the property involved in this action; that the provisions of the trackage agreement and the lease were personal in their nature, and operated in favor of the railroad company alone, and did not operate in favor of the Director General. It is further contended that the provisions are contrary to public policy, and hence invalid. We find it unnecessary to consider these various contentions. Assuming, without deciding, that the provisions are valid and that they inured to the benefit of the Director General, and that he stands precisely in the same position as though the suit were one against the railroad company, the question still remains whether the agreements ex-

empting from liability applies in this case. It will be noted that the injuries for which the trackage agreement exempts the railroad company from liability are those "occasioned by fire or sparks from locomotive engines, or other causes incident to or arising from the movement of locomotives, trains, or cars." The lease recites that the parties thereto understand "that the leased premises are in dangerous proximity to the tracks of the railway company, and that persons and property on the leased premises will be in danger of injury or destruction by fire or other causes incident to the operation of a railway," and that the lessee accepts this lease subject to such dangers. And "it is therefore agreed  .  .  .  that the lessee assumes  .  .  .  all risk of loss, damage, or destruction to buildings or contents, or to any other property brought upon or in proximity to the leased premises by the lessee, or by any other person with the consent or knowledge of the lessee, without regard to whether such loss be occasioned by fire or sparks from locomotive engines or other causes incident to or arising from the movement of locomotives, trains, or cars, misplaced switches, or in any respect from the operation of a railway, or to whether such loss or damage be the result of negligence or misconduct of any person in the employ or service of the railway company, or of defective appliances, engines, or machinery. And the lessee shall save and hold harmless the railway company from all such damage, claims, and losses."

In the construction of contracts, courts look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as the parties who made the contract, so as to judge of the meaning of the words and of the correct application of the language to the things described. The contract must be read in the light of the circumstances under which it was made, and must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful. Comp. Laws 1913, § 5896; 6 R. C. L. p. 849. The whole of the contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others. Comp. Laws 1913, § 5901. Particular clauses therein are

subordinate to its general intent. Comp. Laws 1913, § 5910. However broad may be its terms, it extends only to those things concerning which it appears that the parties intended to contract. Comp. Laws 1913, § 5908.

The language of the provisions relied upon has already been quoted. It appears from the first sentence in each provision that the parties had in mind the fact that railroad trains would pass near the property of the elevator company on the main line and on the sidetrack and spur; that there was danger of injury from sparks and fire that might be scattered from engines or cars utilized in the operation of the railroad, as well as danger of injury from misplaced switches, etc. There is no contention that the loss involved here was occasioned "by fire or sparks from locomotive engines or other causes incident to or arising from the movement of locomotives, trains, or cars," or "misplaced switches." The question therefore resolves to this: "Was the cause of the loss in this case one incident to or arising from the *operation* of a railway, as that term was understood and intended by the parties to the contracts?" We think this question must be answered in the negative.

The meaning of the words "operate" and "operation" as applied to a railway has frequently been considered by the courts.

In Nordean v. Minnesota, St. P. & S. Ste. M. R. Co. 148 Wis. 627, 135 N. W. 150, the supreme court of Wisconsin was called upon to construe the word "operate" as used in the sentence, "all roads hereafter built shall be so fenced and such cattle guards be made within three months from the time of commencing to operate the same so far as operated." After a thorough consideration of the question, the court reached the conclusion that the word "operate" in such statute had reference "to the transportation of goods and passengers, and not to the running of construction trains." Substantially the same conclusion was reached in Rothman v. Interborough Rapid Transit Co. 66 Misc. 378, 121 N. Y. Supp. 200.

In Connors v. Chicago & N. W. R. Co. 111 Iowa, 384, 82 N. W. 953, the supreme court of Iowa was required to construe and apply a statute of that state, providing in effect that in an action against a "corporation operating a railway," for damages "occasioned by fire set out or caused by the operation of such railway," a prima facie case of negligence is established by showing that property for which recov-

cry is sought was injured or destroyed by a fire set out or caused by the operation of the railway. The plaintiff in that case contended that "a fire set by sectionmen in burning the grass along a railroad right of way" was one "set out or caused by the operation of a railway." The court held to the contrary. In its opinion in the case the court said: "The important inquiry then is, What is meant by "operating a railway?" In none of the cases heretofore determined has the application of the statute gone beyond a fire set out or caused by an engine on the track. But under the Coemployees' Act (Code, § 2071), allowing recovery by an employee injured by negligence 'in any manner connected with the use and operation of any railway on or about which they shall be employed,' the clause 'use and operation of any railway' has been frequently considered and defined. Thus, in Stroble v. Chicago, M. & St. P. R. Co. 70 Iowa, 560, 31 N. W. 63, the court, through Beck, J., said: 'What is the use and operation of a railway? It is constructed for the sole purpose of movement of trains. That is its sole purpose. What is the operation of a railway? They can be operated in no other way than by the movement of trains.' . . . We are content with the conclusion reached in Akeson's case,—that a railroad is only operated within the meaning of the law, by 'moving trains, cars, engines, or machinery on the tracks.' The same definition is peculiarly applicable to the clause 'operating any such railway' contained in the statute relating to fires."

In Slaughter v. Canadian P. R. Co. 106 Minn. 263, 119 N. W. 400, the supreme court of Minnesota ruled that a joint traffic arrangement under which the cars of a foreign company were hauled within that state by a domestic railway company did not constitute the "operation of a railroad" within the state by the foreign company whose cars were so hauled.

In Hibbard v. Chicago, St. P. M. & O. R. Co. 96 Wis. 443, 71 N. W. 807, the supreme court of Wisconsin ruled that "a warehouseman of a railroad company who was injured while sealing the doors of a car attached to an engine, through the negligence of the engineer or fireman in suddenly moving the engine, was not employed in 'operating, running, riding upon, or switching' trains or cars, within the meaning of chap. 220, Laws 1893, providing that a railway employee so engaged may recover for injuries caused by the negligence of an-

other employee in the performance of his duties." See syllabus, 96 Wis. 443, 444. In the opinion in that case the court said: "That the plaintiff was not at the time of his injury engaged in 'operating, running, riding upon, or switching' a car, is so plain that argument of the question is unnecessary. Sealing the door of a car, plainly, is not operating or running it."

The provision contained in the lease in this case was invoked by the railway company as a defense in Cooper v. Northern P. R. Co. 212 Fed. 533. In that case the property of the lessee "was destroyed by fire due to dead grass, weeds, brush, and other combustible material upon the right of way, fired by sparks and fire from a locomotive moving cars upon the road." 212 Fed. 534, 535.

The court held "that the lease should be so construed as exempting from liability from fire incident to or arising from railway operation, and not from fires due to the railroad company's violation of Mont. Rev. Codes, § 4310, making it the duty of railroad operators to keep their rights of way free from combustible material, and imposing a liability for damages from fire resulting therefrom, and hence it was no defense to an action for loss occasioned by a failure of the railroad company to keep its right of way free from combustible materials." 212 Fed. 534, ¶ 5, syllabus.

We have cited and quoted from the various cases involving the meaning of the words "operate" and "operation" as applied to railroads, not necessarily because we approve of the meaning attributed to them in all of these cases, but as indicating that the words do not necessarily have the all inclusive meaning for which the defendant contends. In the last analysis the question is, What meaning did the contracting parties intend the word "operation" to have in the contractual provisions involved in this case? The agreements were prepared by the railway company, and hence should be construed most strongly against it. The housing and feeding of men engaged in repairing bridges is necessary to keep a railroad in operation, and in a sense it may be said to arise from or be incident to the operation of a railway. But so is the manufacture of the rails and of the rolling stock, and the mining of the coal with which the engines are fired. So is also the production and distribution of food. And

during the great World War the government found it necessary to exercise its war powers in these several fields. The burning of weeds and dead grass along the right of way, as well as of old rotted ties, is a matter of frequent occurrence in the operation of a railway, yet it would hardly be contended that the contracting parties here contemplated that the railroad company might, with immunity, place piles of weeds or old ties in close proximity to the elevator of the plaintiff company, set fire to them, and thereby cause the destruction of the elevator. Neither do we believe that they contemplated that crews engaged by the railroad company to repair bridges or perform other necessary work on the road should, for the purpose of cooking their food, kindle fires, either on the ground or in cook cars, in such close proximity to the elevator of the plaintiff company as to cause the same to be set on fire. It is our opinion that when the parties contracted with respect to injuries arising from or incident to the operation of the railway, they had in mind such injuries as it might reasonably be anticipated might occur from the carrying on of its traffic, *i. e.,* from the operation of a railway at that place. And we do not believe that the act which it is alleged, and which the jury found, caused the fire in this case, was one covered by the exemption provisions.

It is contended that inasmuch as the jury found that the plaintiff stored machinery, twine, glass, and other things not provided for in the lease, the plaintiff could in no event be held liable unless "wilful and wanton negligence" was established. Under the evidence and the findings of the jury, we do not believe there is any reason for holding that the elevator company, in effect, was trespasser. It is true the lease provided that the premises "shall be used for the exclusive purpose of receiving, storing, shipping, elevating, and delivering grain," but the uncontroverted evidence disclosed that the elevator company constructed its warehouse many years ago for the purpose of storing farm machinery, twine, flour, and feed therein, and had since that time carried on such business. The court takes judicial notice that the only railroad that runs into Gladstone is the railroad which was operated by the defendant. Doubtless the farm machinery and twine which was handled by the elevator company was shipped in over such railroad. The jury also found, as it must, that the station agent, Day, had knowledge of the use to which the premises were being put.

It is true they also found that the defendant Hines did not have such knowledge, and that is unquestionably literally true. Of course there was no evidence tending to show that the Director General personally had such knowledge; but the knowledge of Day was, in contemplation of law, the knowledge of his principal. Furthermore, it does not appear that the destruction of the buildings and property involved in this suit was in any manner either occasioned or augmented by the other articles stored on the premises. If the plaintiff's evidence is true (and the jury so found) the fire started upon the roof of the shed, and from there spread and destroyed the buildings and contents.

It is asserted that the evidence does not show that the plaintiff is the owner of the elevator and the real party in interest. In view of the issues made by the pleadings, we do not deem that question subject to controversy on this appeal. The answer in effect admitted that the plaintiff elevator company was the owner, and no application was made to amend the answer to aver anything to the contrary.

In its instructions to the jury, the court read the following paragraph of the complaint: "That in cooking in said car the servants of the defendants used a stove fed with light highly inflammable fuel made of soft pine grain doors or pine blocks or chips of bridge timbers; that the stovepipe leading from said stove went out through the roof of the box car in which said stove was located, and extended above the roof only a short distance." Later in the instructions the court said: "Now, gentlemen, in answering the question as to negligence, the jury may consider the nature of the kindling and fuel used in the cook car, the manner of kindling the fire therein, the length of the stovepipe, the distance of the stove from the elevator, the weather, the wind, and all other pertinent matters brought out by the evidence." These instructions were made applicable to both defendants. And it is contended in behalf of the defendant Day that as to him these instructions are erroneous. In our opinion, this contention is well founded and must be sustained. It is quite likely that plaintiff's buildings would not have been set on fire if the stove had been properly operated and the usual fuel utilized. The plaintiff predicated negligence not alone upon the position of the car, but upon the particular manner in which the stove was being operated. Day is liable for his own act of negligence. But he had nothing to do with the operation or use of the stove.

There is no evidence and no contention that he had any knowledge that such highly inflammable fuel was being used in its operation. Day's act of negligence, if any, consisted in leaving the car where it was. But for all that appears there would have been no injury if the stove had been properly operated. So far as the Director General is concerned, however, it was proper for the jury to consider the manner of the operation of the stove. If, under the circumstances, it was used in a negligent and careless manner by his servants, such negligence would, of course, be attributable to him.

It is contended that the jury did not find the proximate cause of the destruction of the property in suit. We believe that this contention is untenable. The jury found that the fire which destroyed the property was "communicated to the elevator by sparks from the stovepipe of the cook car;" and that "the leaving of the cook car and its use, at the place where it was located on August 26, 1918, at the time of the fire, constituted negligence on the part of the defendant Walker D. Hines, Director General of Railroads."

It follows from what has been said that the judgment must be affirmed as to the Director General and reversed as to the defendant Day. Respondents will recover costs against the Director General, and the defendant Day will recover costs against the respondents. It is so ordered.

ROBINSON, Ch. J., and BIRDZELL and BRONSON, JJ., concur.

GRACE, J. I concur in the result.