[No. 30336. Department One. May 20, 1948.]

UNITED STATES FIRE INSURANCE COMPANY *et al., Appellants,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*[1]

*Cashatt & Turner,* for appellants.

*Cannon, McKevitt & Fraser,* for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment dismissing the action of plaintiffs, with prejudice, and granting judgment for costs to defendant.

March 1, 1923, the Northern Pacific Railway Company leased a portion of its right of way at Thiel, Washington, to Con Donovan. The subject matter of the lease was a grain warehouse of 40,000 bushels' capacity, owned by Donovan.

The lessee was to pay an annual rental of twenty dollars. Section 6 of the lease provided:

[1]Reported in 193 P. (2d) 868.

"No other railroad or transportation company, or person engaged in transportation, shall be allowed to use any track now or hereafter upon or extending to the premises without permission in writing of the Railway Company, and the Railway Company shall have the exclusive right of carrying all grain to be transported by rail to or from said warehouse."

Section 7 provided:

"It is understood by the parties that the leased premises are in dangerous proximity to the tracks of the Railway Company, and that persons and property on the leased premises will be in danger of injury or destruction by fire or other causes incident to the operation of a railway, and the lessee accepts this lease subject to such dangers. It is therefore agreed, as one of the material considerations of this lease without which the same would not be granted, that the lessee assumes all risk of personal injury to the lessee and to the officers, servants, employes or customers of the lessee while on said premises, and all risk of loss, damage or destruction to buildings or contents or to any other property brought upon or in proximity to the leased premises by the lessee, or by any other person with the consent or knowledge of the lessee, without regard to whether such loss be occasioned by fire or sparks from locomotive engines or other causes incident to or arising from the movement of locomotives, trains or cars, misplaced switches or in any respect from the operation of a railway, or to whether such loss or damage be the result of negligence or misconduct of any person in the employ or service of the Railway Company or of defective appliances, engines or machinery. And the lessee shall save and hold harmless the Railway Company from all such damage, claims and losses."

On October 25, 1923, Donovan, with the consent of the railroad company, sold the warehouse and assigned his interests in the lease to H. E. Morrison and C. G. Eubanks, copartners, doing business under the trade name and style of Morrison Warehouse Company.

On June 20, 1944, the railroad company operated a weed burner in the vicinity of the warehouse in a negligent manner, permitting weeds along the right of way to catch fire; the employees operating the water car which followed the weed burner, and the members of the section crew, who

were on foot, and followed the water car, were negligent in patrolling and in extinguishing the fires set by the weed burner, in that they left the vicinity of the warehouse without making certain that all fires had been extinguished. As a result, the fires spread along the right of way and the warehouse on the leased premises was destroyed.

Morrison and Eubanks commenced suit against the railroad company for damages in the amount of $6,190. The plaintiffs had, before the fire, insured the warehouse with the appellants herein. Appellants had paid the plaintiffs the sum of $6,190 for the destruction of the warehouse, and, under the policies of insurance, became subrogated to the rights of plaintiffs in any cause of action they had for damages resulting from fire. By stipulation of the parties, appellants were substituted in this action as parties plaintiff.

The trial court found that the loss was occasioned by the negligence of the employees of the railroad company; that the amount of the damage was $6,190; but that section 7 of the lease was a complete legal and valid defense to plaintiffs' cause of action.

Respondent admits the negligence of its employees, and the amount of the damage. Appellants admit that no question of public policy is involved, so our sole problem is to determine whether or not the acts complained of, which resulted in the loss of the warehouse, came within the provisions of section 7 of the lease.

The trial court might have been influenced in its decision because, as was said in the memorandum opinion, "A nominal annual rental fee of $20.00 is provided for in the lease." However, that nominal rental fee could have been influenced by the fact that the railway company had the exclusive right of carrying all grain to be transported by rail to and from the warehouse.

The question of what constitutes "operation of a railway" is a matter of first impression before this court, and we must look to the decisions of other jurisdictions to assist us in determining the problem before us.

*Connors v. Chicago & N. W. R. Co.*, 111 Iowa 384, 82 N. W. 953, was an action for damages occasioned by a fire alleged

to have been set and negligently permitted to escape by defendant's employees when burning weeds and grass along its right of way. In reversing a verdict and judgment for plaintiffs, the court said:

"The important inquiry, then, is, what is meant by 'operating a railway?' In none of the cases heretofore determined has the application of the statute gone beyond a fire set out or caused by an engine on the track. But under the co-employes' act (Code, section 2071), allowing recovery by an employe injured by negligence 'in any manner connected with the use and operation of any railway on or about which they shall be employed,' the clause 'use and operation of any railway' has been frequently considered and defined. Thus, in *Stroble v. Railway Co.*, 70 Iowa, 560, the court, through Beck, J., said: 'What is the use and operation of a railway? It is constructed for the sole purpose of the movement of trains. That is its sole use. What is the operation of a railway? They can be operated in no other way than by the movement of trains.' In *Nelson v. Railway Co.*, 73 Iowa, 576, the movement of steam ditching machines, and in *Larson v. Railway Co.*, 91 Iowa, 81, that of a hand car, were held to be operating a railway. In *Akeson v. Railway Co.*, 106 Iowa, 64, after reviewing the authorities, the court concluded that: 'The only dangers peculiar to railroading are those occasioned by the movement of the engines, cars, and machinery on the track, or directly connected therewith. It is evident that the statute contemplates such injuries only as are caused by the negligent acts of employes so engaged. In no other proper sense is a railway used and operated. \* \* \* If, then, the injury is received by the employe whose work exposes him to the hazards of moving trains, cars, engines, or machinery on the track, and is caused by the negligence of a co-employe in the actual movement thereof, or in any manner directly connected therewith, the statute applies, and recovery may be had. Beyond this the statute affords no protection.' "

*Missouri Pac. R. Co. v. H. A. Cady*, 44 Kan. 633, 24 Pac. 1088, was an action to recover damages occasioned by a fire, negligently allowed to spread, which was started by employees of the railroad company, while burning off its right of way. The court said:

"The company assigns a number of errors based upon the rulings of the trial court. A careful examination of each

one of the errors assigned, and a comparison of the same with the questions raised in the case of *Mo. Pac. Rly. Co. v. Merrill*, 40 Kas. 404, shows that each one and all of the errors assigned herein were considered by this court in that case, and decided against the theory of the plaintiff in this case. It is true that in the case above cited the fire was alleged to have escaped from the locomotive while in the operation of its railroad, while in this case the allegation is that the railroad company, its agents and servants, while operating its railroad, negligently and carelessly set fire to the dry grass, weeds and other combustible material along and upon its right-of-way, and negligently and carelessly permitted the fire to escape over and upon the farm of the plaintiff, where it continued to burn and did the damage complained of; and it is claimed by the railroad company that the burning-off of the right-of-way of the railroad company is not an act done in connection with the operation of the railroad, and therefore does not fall within the scope of the language of chapter 155 of the Laws of 1885.

"Upon this subject Mr. Justice JOHNSTON, delivering the opinion in the case of *Mo. Pac. Rly. Co. v. Merrill*, says:

" 'The statutes prescribe a rule in actions for damages by fire, caused by the operation of a railroad, and it is contended that caring for the right-of-way is not within the terms "operating a railroad." The claim is not tenable. The statute applies to all cases where the fire results from the operation of a railroad. It is not even confined to fire escaping from locomotives, but applies to all cases where the damage was caused by fire arising from any step in the operation of the road. The roadway and track of the company are as essential to the operation of the railroad as the locomotive or other equipment; . . . but in our opinion the care and maintenance of the roadway and track is fairly included as a part of the operation of a railroad.'

"The burning of dry grass, weeds, and other combustible material which annually accumulates on the right-of-way, is caring for the roadway and track. It will be seen, therefore, that this question has already been settled by this court, and we believe rightfully and justly settled."

In *Callahan v. St. Louis Merchants' Bridge Terminal R. Co.*, 170 Mo. 473, 71 S. W. 208, 94 Am. St. 746, 60 L. R. A. 249, the plaintiff, a section hand, was injured by a fellow servant, while being stationed below the track to warn other workers

and pedestrians. After discussing decisions from other jurisdictions, the court said:

"It thus appears that everywhere except in Iowa and Minnesota, the adjudications agree that it is not essential that the injury should have been inflicted by reason of the negligence of a fellow-servant while actually engaged in running a car, but that the injured employee may recover if injured by the negligence of a fellow-servant while they are engaged in doing any work for the railroad which was directly necessary for the operation of the railroad, and that even so sweeping a statute as that of Indiana was held by the Supreme Court of the United States, not to be repugnant to or violative of the Federal Constitution.

"Under the language of our statute it is necessary for the injured employee to show that he was injured 'while engaged in the work of operating such railroad.' Construed either by its own terms or in the light of the cases cited from other jurisdictions, it results in holding that the right to recover is not limited to cases where the injury is inflicted by reason of the negligence of a fellow-servant while actually moving a train or engine, but that the law embraces all cases where the injury is inflicted upon an employee while engaged in the work of operating a railroad, by reason of the negligence of any fellow-servant who is likewise engaged in the work of operating a railroad, and that the term 'operating such railroad' includes all work that is directly necessary for running trains over a track, and that it includes section hands who are engaged in working upon, repairing or putting in shape the track, roadbed, bridges, etc., over which the trains must run."

In *Nicholson v. Transylvania R. Co.*, 138 N. C. 516, 51 S. E. 40, the plaintiff was injured by a fellow servant, during the construction of a railroad, and at a point five or six miles in advance of the track laid. It was held that the "fellow servant" act did not apply because the plaintiff was not actually engaged in the operation of a railroad. However, in the opinion, the court said:

"Knowing from the history of the strenuous discussion for and against the passage of the act and from its language as well, that the intention of the legislature was that the doctrine of the non-liability of the master for injuries to an employee caused by the negligence of a fellow servant should be abolished as to all employees in railroad service, 'whether

(as we have said in *Sigman v. Railroad, supra,*) they are running trains or rendering any other service,' we have no disposition to do other than to affirm fully our ruling already made and cited above. But the act applies only to employees of a 'railroad operating,' not that such employees must be operating the trains, but they must be employees in some department of its work, of a railroad which is being operated. Such business is a distinct, well known business, with many risks peculiar to itself and all the employees in such business whether running trains, building or repairing bridges, laying tracks, working in the shops or doing any other work in the service of an 'operating railroad,' are classified and exempted from the rule which requires employees to assume the risk of all injuries which may be caused by the negligence of a fellow servant. It is not necessary to show that the plaintiff was injured by a fellow servant while operating a train, but he must 'show that he was injured while performing a service necessary to, or connected with, the use and operation of the road.' "

In *Gladstone Equity Exchange Co. v. Hines,* 47 N. D. 454, 182 N. W. 763, the court had before it a provision of a lease which was identical with the provision now before us. There a warehouse was destroyed, due to the spread of a fire negligently started from a stove pipe on a cook car, used by a crew of workmen engaged in repairing bridges along the railroad. In holding that the fire was not occasioned during the "operation" of a railroad, the court said:

"In the construction of contracts, courts look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as the parties who made the contract, so as to judge of the meaning of the words and of the correct application of the language to the things described. The contract must be read in the light of the circumstances under which it was made, and must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful. Comp. Laws 1913, § 5896; 6 R. C. L. p. 849. The whole of the contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others. Comp. Laws 1913, § 5901. Particular clauses

therein are subordinate to its general intent. Comp. Laws 1913, § 5910. However broad may be its terms, it extends only to those things concerning which it appears that the parties intended to contract. Comp. Laws 1913, § 5908.

"The language of the provisions relied upon has already been quoted. It appears from the first sentence in each provision that the parties had in mind the fact that railroad trains would pass near the property of the elevator company on the main line and on the sidetrack and spur; that there was danger of injury from sparks and fire that might be scattered from engines or cars utilized in the operation of the railroad, as well as danger of injury from misplaced switches, etc. There is no contention that the loss involved here was occasioned 'by fire or sparks from locomotive engines or other causes incident to or arising from the movement of locomotives, trains, or cars,' or 'misplaced switches.' The question therefore resolves to this: 'Was the cause of the loss in this case one incident to or arising from the *operation* of a railway, as that term was understood and intended by the parties to the contracts?' We think this question must be answered in the negative.

"The meaning of the words 'operate' and 'operation' as applied to a railway has frequently been considered by the courts.

"In *Nordean v. Minnesota, St. P. & S. Ste. M. R. Co.*, 148 Wis. 627, 135 N. W. 150, the supreme court of Wisconsin was called upon to construe the word 'operate' as used in the sentence, 'all roads hereafter built shall be so fenced and such cattle guards be made within three months from the time of commencing to operate the same so far as operated.' After a thorough consideration of the question, the court reached the conclusion that the word 'operate' in such statute had reference 'to the transportation of goods and passengers, and not to the running of construction trains.' Substantially the same conclusion was reached in *Rothman v. Interborough Rapid Transit Co.* 66 Misc. 378, 121 N. Y. Supp. 200.

"In *Connors v. Chicago & N. W. R. Co.* 111 Iowa, 384, 82 N. W. 953, the supreme court of Iowa was required to construe and apply a statute of that state, providing in effect that in an action against a 'corporation operating a railway,' for damages 'occasioned by fire set out or caused by the operation of such railway,' a prima facie case of negligence is established by showing that property for which recovery is sought was injured or destroyed by a fire set out or caused

by the operation of the railway. The plaintiff in that case contended that 'a fire set by sectionmen in burning the grass along a railroad right of way' was one 'set out or caused by the operation of a railway.' The court held to the contrary. In its opinion in the case the court said: 'The important inquiry then is, What is meant by "operating a railway?" In none of the cases heretofore determined has the application of the statute gone beyond a fire set out or caused by an engine on the track. But under the Coemployees' Act (Code, § 2071), allowing recovery by an employee injured by negligence "in any manner connected with the use and operation of any railway on or about which they shall be employed," the clause "use and operation of any railway" has been frequently considered and defined. Thus, in *Stroble v. Chicago M. & St. P. R. Co.* 70 Iowa, 560, 31 N. W. 63, the court, through Beck, J., said: "What is the use and operation of a railway? It is constructed for the sole purpose of movement of trains. That is its sole purpose. What is the operation of a railway? They can be operated in no other way than by the movement of trains." . . . We are content with the conclusion reached in Akeson's case,—that a railroad is only operated within the meaning of the law, by "moving trains, cars, engines, or machinery on the tracks." The same definition is peculiarly applicable to the clause "operating any such railway" contained in the statute relating to fires.'

"In *Slaughter v. Canadian P. R. Co.* 106 Minn. 263, 119 N. W. 400, the supreme court of Minnesota ruled that a joint traffic arrangement under which the cars of a foreign company were hauled within that state by a domestic railway company did not constitute the 'operation of a railroad' within the state by the foreign company whose cars were so hauled.

"In *Hibbard v. Chicago, St. P. M. & O. R. Co.* 96 Wis. 443, 71 N. W. 807, the supreme court of Wisconsin ruled that 'a warehouseman of a railroad company who was injured while sealing the doors of a car attached to an engine, through the negligence of the engineer or fireman in suddenly moving the engine, was not employed in "operating, running, riding upon, or switching" trains or cars, within the meaning of chap. 220, Laws 1893, providing that a railway employee so engaged may recover for injuries caused by the negligence of another employee in the performance of his duties.' See syllabus, 96 Wis. 443, 444. In the opinion in that case the court said: 'That the plaintiff was not at

the time of his injury engaged in "operating, running, riding upon, or switching" a car, is so plain that argument of the question is unnecessary. Sealing the door of a car, plainly, is not operating or running it.'

"The provision contained in the lease in this case was invoked by the railway company as a defense in *Cooper v. Northern P. R. Co.* 212 Fed. 533. In that case the property of the lessee 'was destroyed by fire due to dead grass, weeds, brush, and other combustible material upon the right of way, fired by sparks and fire from a locomotive moving cars upon the road.' 212 Fed. 534, 535.

"The court held 'that the lease should be so construed as exempting from liability from fire incident to or arising from railway operation, and not from fires due to the railroad company's violation of Mont. Rev. Codes, § 4310, making it the duty of railroad operators to keep their rights of way free from combustible material, and imposing a liability for damages from fire resulting therefrom, and hence it was no defense to an action for loss occasioned by a failure of the railroad company to keep its right of way free from combustible materials.' 212 Fed. 534, Par. 5, syllabus.

"We have cited and quoted from the various cases involving the meaning of the words 'operate' and 'operation' as applied to railroads, not necessarily because we approve of the meaning attributed to them in all of these cases, but as indicating that the words do not necessarily have the all inclusive meaning for which the defendant contends. In the last analysis the question is, What meaning did the contracting parties intend the word 'operation' to have in the contractual provisions involved in this case? The agreements were prepared by the railway company, and hence should be construed most strongly against it. The housing and feeding of men engaged in repairing bridges is necessary to keep a railroad in operation, and in a sense it may be said to arise from or be incident to the operation of a railway. But so is the manufacture of the rails and of the rolling stock, and the mining of the coal with which the engines are fired. So is also the production and distribution of food. And during the great World War the government found it necessary to exercise its war powers in these several fields. The burning of weeds and dead grass along the right of way, as well as of old rotted ties, is a matter of frequent occurrence in the operation of a railway, yet it would hardly be contended that the contracting parties here contemplated that the railroad company might, with immunity, place piles

of weeds or old ties in close proximity to the elevator of the plaintiff company, set fire to them, and thereby cause the destruction of the elevator. Neither do we believe that they contemplated that crews engaged by the railroad company to repair bridges or perform other necessary work on the road should, for the purpose of cooking their food, kindle fires, either on the ground or in cook cars, in such close proximity to the elevator of the plaintiff company as to cause the same to be set on fire. It is our opinion that when the parties contracted with respect to injuries arising from or incident to the operation of the railway, they had in mind such injuries as it might reasonably be anticipated might occur from the carrying on of its traffic, i. e., from the operation of a railway at that place. And we do not believe that the act which it is alleged, and which the jury found, caused the fire in this case, was one covered by the exemption provisions."

 We do not feel constrained to follow the reasoning of the North Dakota court. To constitute the "operation" of a railroad requires much more than the mere movement of trains or engines. It requires everything necessary to permit the trains and engines to move, such as the repair and maintenance of bridges, tracks, and buildings. Here we had a piece of machinery called a weed burner. It was operated at this particular point for the purpose of burning weeds along the right of way. It was followed by a water car, and it, in turn, was followed by members of a section crew, on foot. Surely this work was as necessary a part of the "operation of a railroad" as the movement of trains or engines.

 Furthermore, we believe that the North Dakota court took too narrow a view of the terms of section 7 of the lease. It exempts from liability any loss occasioned by fire or sparks: (1) from locomotive engines or other causes arising from the movement of locomotives, trains or cars; (2) misplaced switches; (3) or in any respect from the operation of a railway; (4) or the result of negligence or misconduct of any person in the employ or service of the railway company; (5) or of defective appliances, engines or machinery. Loss occasioned by fire from any one of the foregoing causes would hold harmless the railway company, under the lease.

Although it is not binding on us in any particular, the legislature has, for taxation purposes, defined the term "operating property" of transportation companies in Rem. Rev. Stat. (Sup.), § 11156-1(17) [P.P.C. § 983-1(17)], as follows:

"(17) The term 'operating property' shall mean and include all property, real and personal, owned by any company, or held by it as occupant, lessee or otherwise, including all franchises and lands, buildings, rights-of-way, water-powers, motor vehicles, wagons, horses, aircraft, aerdromes, hangars, office furniture, water mains, gas mains, pipe lines, pumping stations, tanks, tank farms, holders, reservoirs, telephone lines, telegraph lines, transmission and distribution lines, dams, generating plants, poles, wires, cables, conduits, switch boards, devices, appliances, instruments, equipment, machinery, vessels, ferries, landing slips, docks, roadbeds, tracks, terminals, rolling stock equipment, appurtenances and all other property of a like or different kind, situate within the State of Washington, used by the company in the conduct of its operations; . . ."

It is true that the lease was drawn by the company. However, its terms are free from ambiguity, and the court would have no right to take testimony which would place it in the position of the parties in order to determine what was in their minds when it was executed.

The judgment is affirmed.

MALLERY, C. J., MILLARD, SIMPSON, and HILL, JJ., concur.